PAFFORD v. HALL, SECRETARY OF STATE.

4-9399                                    233 S. W. 2d 72

Opinion delivered October 16, 1950.

*Harry C. Robinson,* for petitioner.

*Ike Murry,* Attorney General and *Cleveland Holland,* Assistant Attorney General, for respondent.

*J. S. Abercrombie* and *McMillan & McMillan,* for intervener.

GEORGE ROSE SMITH, J.   This is an original action in which the plaintiffs question the sufficiency of a petition for an initiated act to be popularly known as ''A State-wide Prohibition Act.''   When the petition was filed with the defendant Hall, Secretary of State, he caused it to be examined and found that it contains 53,224 valid signatures.   He accordingly declared the petition to be sufficient, as only 19,945 signatures are necessary to equal the required eight per cent of the total vote for governor in the most recent general election.   Ark. Const., Amendment 7.   The plaintiffs then brought this action to enjoin Hall from certifying the ballot title to the various county election officials.   The Temperance League of Arkansas had sponsored the proposed act and intervened to defend the validity of its petition.

The petition is composed of about 1,700 separate sheets, each verified by the affidavit of the canvasser who circulated it.   The plaintiffs assert in their complaint that 1,290 of these sheets must be rejected in their entirety, because on each one there is at least one instance of a husband's having signed his wife's name in addition to his own, or vice versa.   It is admitted by all the parties that if these 1,290 sheets are entirely void the rest of the petition does not contain the necessary 19,945 names.   After filing the suit the plaintiffs began taking testimony to prove their assertions, but it soon became apparent that in hundreds of instances a person had in fact signed the name of his spouse as well as his own.   The defendant and the intervener thereupon ended the taking of this testimony by stipulating that each of the 1,290 sheets does contain a signature not written by the petitioner himself, as alleged in the complaint.   It is hardly necessary to say that we scrutinize a stipulation of this kind with great care.   All those who signed the petition have a direct interest in the case, and the handful of parties to the action cannot be permitted to nullify the petition

by an imprudent stipulation. Nevertheless an examination of this petition discloses that both names of a great many married couples are in the same handwriting, and we see no reason not to approve a stipulation that was evidently made in good faith to eliminate extensive and laborious proof.

The plaintiffs, relying mainly on some language in *Sturdy* v. *Hall,* 201 Ark. 38, 143 S. W. 2d 547, contend that all the names on these 1,290 sheets must be disregarded, since the canvassers necessarily made false statements in their affidavits verifying the genuineness of the signatures. On the other hand the defendant and the intervener rely upon a later case, also styled *Sturdy* v. *Hall,* 204 Ark. 785, 164 S. W. 2d 884, to support their contention that it is not enough for the plaintiffs to show that a single signature on a sheet is not genuine; the plaintiffs must go farther and prove that the canvasser has been guilty of conscious and deliberate fraud.

It is perhaps possible to reconcile the holdings in the two *Sturdy* cases on the basis of their particular facts, but in a matter of undoubted public interest we think it desirable to eliminate any uncertainty that these opinions may have created. We are unanimously of the opinion that the later *Sturdy* case states the law correctly; that is, one who attacks a petition cannot destroy the verity of the circulator's affidavit merely by proving that at least one signature is not genuine. The plaintiff must also adduce proof to show that the falsity of the canvasser's affidavit was conscious rather than inadvertent.

Here the plaintiffs have been content merely to show that in 1,290 instances one person signed the name of his spouse. We need not decide whether such a showing is alone sufficient to make a *prima facie* case of fraud, for the intervener has gone forward with the evidence by taking the depositions of 962 of the canvassers whose sheets are questioned. Their testimony completely negatives the suggestion that they were motivated by improper purposes in making affidavits that are not strictly true. In many instances both the husband and wife were

present and one asked the other to sign for the two. In other cases the challenged signature had already been written before the canvasser realized what was being done. There is hardly an indication of actual fraud in the great volume of testimony that has been submitted. Under our earlier decisions we must of course reject the 1,290 illegal signatures, as well as the entire sheet in those rare instances when a finding of intentional wrongdoing is justified, but even then the number of valid signatures is still far more than twice what is needed.

Another objection to the petition is based on the intervener's failure to comply with the statutory requirement that there be filed with the Secretary of State a certified poll tax list for each county in which signatures have been obtained. Ark. Stats. 1947, § 2-206. This requirement is not contained in Amendment 7, but the Amendment does state that laws may be passed to facilitate its operation, even though the Amendment is declared to be self-executing. We think the requirement in question is valid, since the filing of the poll books is not a burdensome condition and manifestly aids the Secretary of State and this court in determining whether enough qualified electors have signed the petition. Hence the Secretary of State should have required the poll books to be filed. Instead, he accepted the petition and without the books certified that the petition was sufficient. If the plaintiffs were now attacking the petition on the ground that an examination of the poll books discloses that not enough qualified electors have signed the petition, then the absence of the books might be a reason for rejecting the petition. But that is not the basis for attack in this case. The case was not tried on the theory that anyone who signed this petition is not a qualified elector. The purpose of the statute is to facilitate the exercise of the power of initiative, and for that reason alone the act is constitutional. It would altogether distort the intention of the Legislature to hold that the people should not be allowed to vote on a measure merely because the books were not filed in an instance where their presence or absence is wholly immaterial.

The plaintiffs make other attacks on the petition, but they may be answered in a few words. The Constitution directs that the petition be filed ''not less than four months'' before the election. This election is to be held on November 7, and it is argued that the filing of the petition on July 7 was one day too late. That result can be reached only by excluding both the first and the last day, and would involve saying that January 1 is less than a month before February 1. The law does not care about fractions of a day, however, and we have consistently held that only one of the two days need be excluded. *State* v. *Hunter,* 134 Ark. 443, 204 S. W. 308, and see Ark. Stats., § 27-130. It is also urged that each canvasser's affidavit should have set out the names of those who signed the sheet, but in *Terral* v. *Ark. Power & Light Co.,* 137 Ark. 523, 210 S. W. 139, we held this to be unnecessary.

The act's popular name, A Statewide Prohibition Act, is said to be misleading because the measure would permit every person to possess not more than one quart of intoxicating liquor. The Constitution makes no reference to a popular name; this is merely a legislative device (Ark. Stats., § 2-208) that is evidently useful in making it easy for voters to discuss a measure before the election. It seems too clear for argument that the popular name need not have the same detailed information as is required for the formal ballot title, else there would be no difference between the two. This act does prohibit the manufacture or sale of intoxicating liquor, and that is prohibition as the term is generally understood. There are of course exceptions to complete prohibition, as the use of alcoholic beverages for medicinal or religious purposes, but the popular name certainly cannot include them all.

Finally, it is argued that the ballot title was not filed with the State Board of Election Commissioners. The title appears on each of the 1,700 sheets, and they were filed with the Secretary of State, who is a member of the board in question. Under our holding in *Westbrook* v.

*McDonald,* 184 Ark. 740, 43 S. W. 2d 356, 44 S. W. 2d 331, this is a substantial compliance with the Constitution.

The petition for an injunction is denied.