ARKANSAS WOMEN'S POLITICAL CAUCUS
*v.* The Honorable Paul RIVIERE, Secretary of State,
State of Arkansas; THE STATE BOARD OF ELECTION
COMMISSIONERS of the State of Arkansas; and
THE COUNTY BOARDS OF ELECTION
COMMISSIONERS OF THE STATE OF ARKANSAS

The UNBORN CHILD
AMENDMENT COMMITTEE, Intervenor

84-215

677 S.W.2d 846

Supreme Court of Arkansas
Opinion delivered October 24, 1984

*Mays & Crutcher Law Firm,* by: *Richard L. Mays* and *Tara Levy,* for petitioner.

*Steve Clark,* Att'y Gen., by: *Curtis Nebben,* Dep. Att'y Gen., for respondent.

*Robert S. Shafer* and *Leon Holmes,* for intervenor/respondent.

ROBERT H. DUDLEY, Justice. In this original action the petitioner, the Arkansas Women's Political Caucus, asks this court to declare invalid proposed Constitutional Amendment No. 65, "The Unborn Child Amendment." We hold that the popular name of the proposed amendment constitutes a partisan coloring of the ballot and declare the measure ineligible for consideration at the November 6, 1984, election.

In two historic cases, the Supreme Court of the United States decided that the Constitution protects a woman's right to decide whether to terminate her pregnancy and that a state may not unduly burden the exercise of a woman's fundamental right to obtain an abortion. *Roe* v. *Wade,* 410 U.S. 113 (1973) and *Doe* v. *Bolton,* 410 U.S. 179 (1973). These two 1973 cases did not resolve all of the complex issues involved in the abortion controversy. In 1977, in a trilogy of cases, the Court ruled that neither the Constitution nor federal statutes required public funding of elective abortions for poverty stricken women. *Beal* v. *Doe,* 432 U.S. 438 (1977); *Maher* v. *Roe,* 432 U.S. 464 (1977); and *Poelker* v. *Doe,* 432 U.S. 519 (1977). The 1977 trilogy did not address the

question of whether state laws could validly prohibit governmental funding of medically necessary abortions.

The original action now before us is a continuation of the abortion controversy at the state level. On one side, the intervenor, The Unborn Child Amendment Committee, desires to amend the Arkansas Constitution to adopt a policy limiting abortion, not only from viability, but from conception. The intervenor would also prohibit the use of public funds for abortion, directly or indirectly, unless it was for the purpose of saving the woman's life. On the other side, the petitioners, the Arkansas Women's Political Caucus, desires to maintain the present silence of the Constitution of Arkansas on the subject. That silence allows a statute to provide that a woman and her physician may make the choice under certain circumstances. *See* Ark. Stat. Ann. § 41-2554. It allows the state, if it chooses, to treat abortion as an accepted medical procedure under Medicaid type programs.

Amendment 7 to the Constitution of Arkansas gives all citizens of this state the right to initiate constitutional amendments. The intervenor, Unborn Child Amendment Committee, seeks to exercise that right. They have drafted a proposed amendment, a proposed popular name and a proposed ballot title. They have submitted the proposed popular name and ballot title to the Attorney General for approval. *See* Ark. Stat. Ann. § 2-208 (Repl. 1976 and Supp. 1983). The Attorney General has ruled that the popular name and title are not misleading and has approved them for circulation. They have circulated initiative petitions and the Secretary of State has determined that they had obtained sufficient signatures in order to have the initiated proposed amendment on the November 6, 1984, ballot.

The petitioner contends that the ballot title and popular name are partial and misleading to the extent that the electorate will be deceived. Our standard of review for these actions is clear. It is the duty of this court to see that ballot titles and popular names are (1) intelligible, (2) honest, and (3) impartial. *Leigh* v. *Hall,* 232 Ark. 558, 339 S.W.2d 104 (1960).

The requirements for the popular name are not as stringent as those for the ballot title. It is simply a legislative device which is useful for voters to discuss a measure before an election. *Pafford* v. *Hall,* 217 Ark. 734, 233 S.W.2d 72 (1950). However, popular ballot names which contain catch phrases or slogans that tend to mislead or give partisan colorings to the merit of a proposal will be rejected. *Moore* v. *Hall,* 229 Ark. 411, 316 S.W.2d 207 (1958). The popular ballot name, "The Unborn Child Amendment" is misleading.

An unborn child cannot exist before life begins, but those trained in the disciplines of law, medicine, philosophy and theology are unable to arrive at a consensus of when life begins. A synopsis of thought is found in *Roe* v. *Wade,* 410 U.S. at 160-61.

> . . . There has always been strong support for the view that life does not begin until live birth. This was the belief of the Stoics. It appears to be the predominant, though not the unanimous, attitude of the Jewish faith. It may be taken to represent also the position of a large segment of the Protestant community, insofar as that can be ascertained; organized groups that have taken a formal position on the abortion issue have generally regarded abortion as a matter for the conscience of the individual and her family. As we have noted, the common law found greater significance in quickening. Physicians and their scientific colleagues have regarded that event with less interest and have tended to focus either upon conception, upon live birth, or upon the interim point at which the fetus becomes "viable," that is, potentially able to live outside the mother's womb, albeit with artificial aid. Viability is usually placed at about seven months (28 weeks) but may occur earlier, even at 24 weeks. The Aristotelian theory of "mediate animation," that held sway throughout the Middle Ages and the Renaissance in Europe, continued to be official Roman Catholic Dogma until the 19th century, despite opposition to this "ensoulment" theory from those in the Church who would recognize the existence of life from the

moment of conception. The latter is now, of course, the official belief of the Catholic Church. As one brief *amicus* discloses, this is a view strongly held by many non-Catholics as well, and by many physicians. Substantial problems for precise definition of this view are posed, however, by new embryological data that purport to indicate that conception is a "process" over time, rather than an event, and by new medical techniques such as menstrual extraction, the "Morning-after" pill, implantations of embryos, artificial insemination, and even artificial wombs.

From this synopsis it can be seen that there are three schools of thought on the issue of when life begins; at conception, upon live birth, or at the point upon which the fetus becomes viable. The intervenor committee follows that school of thought which believes that life begins at conception. The ballot name "unborn child," standing alone, would tend to mislead those voters who follow an alternate school of thought and do not think of fetuses of certain gestational ages as unborn children. Those voters could well make a distinction between a one-second old conceptus and a fetus of eight months gestation which this popular name does not acknowledge. More significantly, the enactment of the proposed amendment would do two things, equally far-reaching: it would immediately prohibit the use of public funds for abortion, including a female impregnated by rape or incest, unless the life of the mother were in danger; and two, it would empower the General Assembly to prohibit abortion under any circumstances to the extent permitted under the Constitution of the United States. Yet, the popular name makes no reference whatsoever to this emotionally charged subject. Instead, the ballot name contains only the inviting catch words "unborn child," which gives the voters only the impression the proponents of the amendment want them to have. Very few would vote against a child, born or unborn, even though they are for a woman's right to have an abortion or for the state paying for it. The popular name is a clear-cut example of the partisan coloring of ballots which we have uniformly condemned in our decisions holding that a ballot name must be fair and impartial.

We are aware that overshadowing this particular proposed amendment are the rights of initiative and voting. We are keenly aware that all citizens of this state are being denied those rights by this opinion, even after the sponsors have been through a long and expensive process. However, in a case of this kind, the Constitution plainly places the responsibility on this court to see that the result of an election represents the objective judgment of the voters. The popular ballot title conveys a biased view of the merits of the proposal. It is plainly our duty to declare it misleading.·

Petition granted.

HUBBELL, C.J., and HICKMAN, J., dissent.

Purtle, J., not participating

WEBB HUBBELL, Chief Justice, dissenting. The only issue before us is whether Amendment 65's ballot title and popular name are (1) intelligible, (2) honest, and (3) impartial. *Leigh* v. *Hall*, 232 Ark. 558, 339 S.W.2d 104 (1960). The petitioner does not raise the constitutionality of the proposed amendment, so that issue cannot be considered.

The ballot title is an almost verbatim reproduction of the amendment and is not misleading. The popular name "Unborn Child Amendment" need not have the same detailed information as is required for the ballot title. Although many people oppose the use of the term "unborn child," since *Roe* v. *Wade*, 410 U.S. 113 (1973), the term is understood and widely used. Several of our surrounding states use "unborn child" in their abortion statutes and define unborn child as the entity from conception to birth. Mo. Rev. Stat. § 188.015; Okla. Stat. 6351-730. The popular name, although certainly used to provoke emotion, is intelligible.

We should always heistate to remove any initiated act from the ballot. Our function is to unify, not fracture, to set limits and define boundaries within which the political process can operate. We cannot ordain specific solutions to vexatious, divisive, and perhaps insoluble problems of

public policy. Unless the people stray beyond the bounds of reasonable constitutional interpretation, we should not hurl our constitutional thunderbolts.

DARRELL HICKMAN, Justice, dissenting. Because of the nationwide emotionalism surrounding the subject of this case, it is easy to lose sight of the only issue for us at this time: whether the ballot title is misleading, deceptive or dishonest.

Presently in this country there is a national debate on the question of abortion. It has polarized the two major political parties and their candidates for president. Various groups have thrown down the gauntlet on the issue and some of them are represented in this action. It is in this atmosphere that a proposal comes to us to change the Arkansas Constitution through the machinery provided in Amendment 7, the last remaining vestige of power directly retained by the people. Only this court can interfere with that right, and we should only do so in cases of deceptive or misleading statements on the ballot.

Our sole concern at this time is the legal sufficiency of the ballot title. As the majority has found, I agree that the ballot title itself pulls no punches, sugars no phrases and is an honest statement of the proposed amendment. The popular name, "The Unborn Child Amendment," however, is found by the majority to be "politically colored." I dissent because in no way is the popular name deceptive since that is precisely what the amendment is about. The popular name cannot, if it is to serve any useful purpose to the voter, be more than a statement of the subject matter of the amendment, and this amendment is about children that have not yet been born. It does not and should not contain every provision of a proposed law.

"Unborn child" is a catch phrase and partisan only if one is persuaded to join this fray between ideological, social and legal opposites. In *Pafford* v. *Hall*, 217 Ark. 735, 233 S.W.2d 72 (1950), we reviewed a ballot title called "A Statewide Prohibition Act." Prohibition is a catch phrase if any word is. The word "prohibition" is not an offensive or persuasive word in itself, and its use was not found to be

misleading. Yet if any word would quickly excite the hearts of the temperance advocates and opponents during the days of prohibition, it was that word. We had no difficulty approving the title, and it did not explain what the act was about.

I will not discuss all the uses of the phrase "unborn child" that routinely occur in dictionaries and law books. I merely note that it is an ordinary phrase that has been in use for years. *Union Pacific Railroad Co.* v. *Botsford,* 141 U.S. 250 (1891); Webster's New Collegiate Dictionary (1980); Arkansas Digest, Descriptive Word Index, Vol. 1B, p. 577; West's Modern Federal Practice Digest, 2nd, Descriptive Word Index, Vol. 92, p. 476.

Most of the petitioner's argument centers on this phrase and the fact that the amendment attempts to alter or change what was said in *Roe* v. *Wade,* 410 U.S. 113 (1973). It is argued that the phrase "unborn child" is meaningless because a fetus, during the first three months of pregnancy, is not a "person;" therefore, unborn child is not accurate either legally or scientifically. Assuming that to be true, how many people know that? Should the amendment be called the conceptus amendment, because it defines an unborn child as being from conception? That would be nonsense. Whatever the United States Supreme Court held in *Roe* v. *Wade, supra,* in terms of defining what a person is constitutionally, is irrelevant to the question before us at this time.

In my judgment, the title is actually not what is objectionable to the petitioner; it is the *whole* amendment that it finds repulsive. I appreciate and respect the petitioner's legal and moral objections to the proposed amendment. All or part of the amendment may be illegal, but that is not the issue before us. We cannot inject ourselves into the ideological differences of the parties and, by so doing, interfere with the constitutional right of the people to vote on the amendment. Amendment 7 is the only means by which the people can choose the law they want, rather than be governed by a law the governor or legislature may want. Our role is only to see that the proposal meets the minimum requirement of sufficiency. Our duty is clear. We must

liberally construe Amendment 7 in order to reserve to the people the right to approve or disapprove proposed legislation. *Becker* v. *Riviere,* 270 Ark. 219, 604 S.W.2d 555 (1980); *Mason* v. *Jernigan,* 260 Ark. 385, 540 S.W.2d 851 (1976). The ideological and legal battle must wait until we are presented with the question of whether the amendment itself is legal and not contrary to the United States Constitution.

This is an emotional issue. However, the law does not prohibit the people from voting on issues that involve deep feelings. These issues always give rise to diametrically opposed viewpoints.

I cannot fail to mention that the last measure we allowed on the ballot was Amendment 60 which changed the usuary provision of the constitution. *Becker* v. *Riviere,* 277 Ark. 252, 641 S.W.2d 2 (1982). The amendment was to allow an increase in the interest rate, yet the ballot title said it would "control" interest rates. I have yet to fully understand how some ballot titles pass inspection and others fail. Ultimately, we are judged on what we do, not what we say.

The majority presumes that the people of Arkansas are too easily misled and uninformed about the voting process. They presume that the voters will read only the popular name and vote for it. I presume otherwise. The voters, that is those who have not already made up their minds, will see the popular name, read on and see what the amendment is about before they vote.

I find no deception and would deny the petition.