Cary L. GAINES and Bob Lamb *v.* W.J. "Bill" McCUEN, Secretary of State

Governor Bill Clinton, et al., Intervenors/Respondents

88-229                                          758 S.W.2d 403

Supreme Court of Arkansas
Opinion delivered October 12, 1988

*Friday, Eldredge & Clark*, by: *Michael G. Thompson* and *Robert S. Shafer*, for petitioners.

*Steve Clark*, Att'y Gen., by: *Frank J. Wills III*, Asst. Att'y Gen., for respondent.

*Rose Law Firm, A Professional Association*, by: *Webb Hubbell* and *Jess Askew III*, for intervenors/respondents.

ROBERT H. DUDLEY, Justice. By this original action, the petitioners seek to enjoin the Secretary of State from certifying as sufficient a popular name and ballot title to be voted upon at the general election in November. Pursuant to Paragraph 22, Amendment 7 to the Constitution of Arkansas, we have treated the case on an expedited basis. The petition asserts that the popular name is incomplete and that the ballot title is both incomplete and misleading. These assertions are controverted by the respondent Secretary of State and by the sponsors of this initiated act. We find that the popular name is sufficient to identify the initiative and the ballot title fairly states the general purposes of the proposed act and, accordingly, we decline to issue the injunction.

Petitioners first attack the popular name of the initiative, which is: "Standard of Conduct and Disclosure Act For Lobbyists And State Officials." The popular name of a proposed act must be intelligible, honest, and impartial. *Arkansas Women's Political Caucus* v. *Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984). The popular name is designed to make it easy for voters to discuss the proposal prior to the election, by giving them a label to identify it. *Pofford* v. *Hall*, 217 Ark. 734, 233 S.W.2d 72 (1950). We have declared popular names invalid because they were misleading or used biased language. *Jackson* v. *Clark*, 288 Ark. 192, 703 S.W.2d 454 (1986); *Arkansas Women's Political Caucus* v. *Riviere*, 283 Ark. 463, 677 S.W.2d 846 (1984); *Moore* v. *Hall*, 229 Ark. 411, 316 S.W.2d 207 (1958); *Bradley* v. *Hall*, 220 Ark. 925, 251 S.W.2d 470 (1952). However, because so little

is required of a popular name, we have never held a proposed measure invalid solely because of an incomplete description of the act by the popular name. *See* Kennedy, *Initiated Constitutional Amendments In Arkansas: Strolling Through the Mine Field*, 9 UALR L.J. 1, 23 (1986-87).

In this case the popular name reflects that the proposed ethics act affects "Lobbyists and State Officials." However, the proposed act also applies to candidates for state elective office. The petitioners contend that the failure to include mention of candidates for state office invalidates the measure. The argument is without merit because the popular name is concise enough, and clear enough, for the voters to refer to and identify it easily.

The petitioners next argue that the ballot title, as distinguished from the popular name, is invalid. It reads as follows:

A proposed act requiring lobbyists, as defined, to register with the Secretary of State if seeking to influence legislative or administrative actions of state government; excepting some persons from registering; requiring lobbyists to file quarterly reports, and monthly reports during legislative sessions; specifying information to be reported, including gifts, as defined, itemized expenses, except campaign contributions, exceeding twenty-five dollars ($25.00), special event expenses, total expenses incurred in lobbying, business associations between the lobbyists and those lobbied, and loans in excess of twenty-five dollars ($25.00) made, promised, or contracted for to public officials, as defined, which are not in the ordinary course of business by regular lenders;

Prohibiting lobbyists from using coercion or bribery to influence any public official, as defined, purposely providing false information to public officials, as defined, while lobbying, purposely falsifying information when registering, or acting as a lobbyist for three years after being convicted of a violation of the subchapter governing lobbyist registration and disclosure;

Prohibiting any person from purposely employing a lobbyist who is required to register but is not registered;

Requiring public officials, as defined, to report annually for themselves and their spouses the following: their names and all names under which they do business, sources of income exceeding one thousand dollars ($1,000.00) and twelve thousand five hundred dollars ($12,500.00) annually except individual items of income constituting a portion of the gross income of the public official's, as defined, or spouse's business or profession, business investments exceeding one thousand dollars ($1,000.00) and twelve thousand five hundred dollars ($12,500.00), offices or directorships held in businesses subject to government regulation in Arkansas, and gifts received having a value of one hundred dollars ($100.00) or more; requiring such officials to report each creditor, excepting family members and regular lenders, to whom five thousand dollars ($5,000.00) or more is owed, each guarantor or co-maker, excepting family members, of debts assumed or arising after January 1, 1989, and nongovernmental sources of payment for their official food, lodging, and travel exceeding one hundred fifty dollars ($150.00); requiring such officials to disclose employment with firms regulated by the official's government office, and financial ties with firms doing business in excess of one thousand dollars ($1,000.00) annually with such office;

Prohibiting public officials, as defined, from receiving private gifts or compensation for the performance of official duties, or purposely disclosing or using confidential government information to secure something of material benefit; restricting appearances by state legislators on behalf of others for compensation before state agencies; requiring state legislators to report official actions that may conflict with or affect their personal financial interests or their businesses;

Punishing violations as Class A misdemeanors requiring a purposeful mental state; providing that prosecuting attorneys in districts where violations occur have jurisdiction; granting the State Attorney General authority to investigate alleged violations, to conduct hearings, to issue public letters of caution or warnings, to issue advisory opinions and guidelines, and to make reports and recom-

mendations, when appropriate, to law enforcement officials and prosecuting attorneys; making the initiated act effective on January 1, 1989; and for other purposes.

■ The sponsors of the proposed act submitted the popular name and ballot title to the Attorney General for his approval prior to circulation of the initiative petitions. *See* Ark. Code Ann. § 7-9-107 (1987). The Attorney General changed both the popular name and ballot title and, as changed, certified them as sufficient. The respondents contend that the Attorney General's determination of sufficiency mandates deference, pointing to our statement "that only in a clear case, should a title so prepared be held insufficient." The quoted language is from *Mason* v. *Jernigan*, 260 Ark. 385, 540 S.W.2d 851 (1976). We have made other similar statements but they are somewhat illusory. Whether the Attorney General has correctly determined the sufficiency of the name and title is a matter of law to be decided by this Court. It is not at all comparable to a finding of fact by a trial court, which we will set aside only if it is clearly erroneous. ARCP Rule 52(a).

■ Ark. Code Ann. § 7-9-107, the only statutory law concerning sufficiency of ballot titles, provides that the ballot title "shall briefly and concisely state the purpose of the proposed measure." The bulk of the law on the subject is case law. Our most significant rule is that in determining the sufficiency of the title *we give a liberal construction and interpretation* of the requirements of Amendment 7 in order to secure its purposes to reserve to the people the right to adopt, reject, approve, or disapprove legislation. *Fletcher* v. *Bryant*, 243 Ark. 864, 422 S.W.2d 697 (1968). We assume that many voters will enter the voting booth knowing little about an initiated proposal, *Westbrook* v. *McDonald*, 184 Ark. 740, 43 S.W.2d 356 (1931), and, therefore, the title should contain enough information to "convey an intelligible idea [of the] scope and import of the proposed law." At the same time, it must not be unduly long since a voter is allowed only three minutes in the voting booth. Ark. Code Ann. § 7-5-522(d) (1987). The ballot title must accurately reflect the general purposes and fundamental provisions of the proposed initiative, so that an elector does not vote for a proposal based on its description in the ballot title, when, in fact, the vote is for a position he might oppose. *Coleman* v. *Sherrill*, 189 Ark. 843, 75 S.W.2d 248 (1934). The title need not recite all of the details of the proposal,

*Coleman* v. *Sherrill, supra*; however, if the information would give the elector "serious ground for reflection" it is not a mere detail, and it must be disclosed. *Hoban* v. *Hall*, 229 Ark. 416, 316 S.W.2d 185 (1958). Finally, a ballot title, like the popular name, must be intelligible, honest, and impartial. *Arkansas Women's Political Caucus*, 283 Ark. 463, 677 S.W.2d 846 (1984).

Three of the petitioners' points of appeal are that the ballot title at issue is invalid because of omissions. They first argue that the title does not mention candidates for state elective office, and that since the proposed act concerns them, the title is invalid. Although the ballot title does not expressly refer to candidates for state elective office, neither does the proposal itself purport to have the general purpose of regulating campaign practices. It only tangentially governs candidates for state office, by seeking to illuminate those relationships which would be covered under the initiative if the candidate were to win the election. The only real change in the proposed act regarding candidates is a slight broadening of the scope of disclosure and an increase in the penalty for violation of the disclosure requirements, from a Class B misdemeanor to a Class A misdemeanor. The proposal does not affect any other existing laws governing candidates, which remain within the scope of the campaign practices and financing laws, found in Ark. Code Ann. §§ 7-6-101 to -214 (1987). These changes are minimal when viewed in the context of the entire initiative, and are certainly consistent with the act's general purposes. This is not the type of omission that would give the elector "serious ground for reflection" if he were made aware of it.

Petitioners next attack the ballot title because it "fails to disclose the act's disparate treatment of lobbyists." The title states that "lobbyists, as defined" will be required to register and that "some persons" will be exempt from registration. This is sufficient since it states that the proposed act defines "lobbyist" and provides for certain exemptions from the act. The general purpose and fundamental provisions of the initiative are set out. Requiring more detail would thwart the purpose of having a ballot title.

Petitioners next state that the title fails to disclose that small gifts from lobbyists do not have to be reported, and argue that this

constitutes a material omission. Again, the title refers to "gifts, as defined" and provides: "Specifying Information to be Reported, Including Gifts, as defined, Itemized Expenses, except Campaign Contributions, exceeding Twenty-Five Dollars ($25.00) . . . ." The ballot title is accurate in its description of the reporting requirement.

In addition, petitioners argue that the ballot title contains two statements which are false and misleading. A ballot title must be honest, it must not be misleading or deceptive. The first allegedly deceptive statement is that "lobbyists" will be subject to prohibitions for using undue influence or for providing false information to public officials. Petitioners contend that the statement is deceptive because the prohibitions actually apply to "all persons engaged in lobbying" and not just to "lobbyists." Initiative § 21-8-607(b) (1) and (2).

The only difference between a "lobbyist" and a "person engaged in lobbying" is that a lobbyist is paid, or spends more than $250.00, excluding expenses, on lobbying in a calendar quarter. At present, all citizens, whether lobbyists or persons engaged in lobbying, are prohibited from bribing public officials or using deceit to influence public action. *See* Ark. Code Ann. §§ 5-52-102 to -105 (1987). Sections 21-8-607(b)(1) and (2) of the initiative would not change the present law on bribery of public officials or on the use of deceit to influence public officials. They would only prevent some practices, which, though not directly public servant bribery or deceit, fall into a gray area. This is not a significant change in the law, only an incremental one to fill a void in the current law, and the statement is not misleading or deceptive.

Finally, the petitioners argue that the title misleadingly provides that lobbyists will be required to file public reports under the initiative when, in actuality, those who are exempt from registration will not be required to file a public report. We are of the opinion that petitioners' initial premise, that the title is misleading, is not valid. The pertinent part of the title provides:

A proposed act requiring lobbyists, as defined, to register with the Secretary of State if seeking to influence legislative or administrative actions of state government;

excepting some persons from registering; requiring lobbyists to file quarterly reports . . . .

As can be seen, the title expressly states that some persons may be exempted from registering, and nowhere does it indicate that exempt persons would be required to file public reports. However, even if a voter could not tell from the title that only registered lobbyists must file reports, the alleged variance between the ballot title and the initiative is not of any real significance and does not counteract the general purpose of the initiative.

In summary, the initiative is adequately identified by popular name and its general purposes are fairly stated in the ballot title. A liberal construction of Amendment 7 requires that we not thwart the right of the voters to approve or reject the measure because of the minor deficiencies asserted by petitioners.

The petition for an injunction is denied.

PURTLE, J., dissents.

HAYS, J., not participating.

JOHN I. PURTLE, Justice, dissenting. It gives me no pleasure to dissent in a case where the objectives of the proposed initiated act are so clearly laudible. However, it is my duty and responsibility to point out the mistake that has been made by the sponsors of the proposed amendment and the majority of this court.

I am in complete agreement with the majority concerning the law and precedent. My difference with them is in the interpretation of the popular name and ballot title. The popular name is short and simple-looking and clear, provided you know what a "lobbyist" is. Certainly the name does not explain the meaning of the word. To compound the error, the act itself uses the term in several different ways.

The ballot title is supposed to give the voter a condensed version of the text of the proposal in sufficient detail to enable the voter to make an intelligent choice when voting on the proposal. *Westbrook* v. *McDonald*, 184 Ark. 740, 44 S.W.2d 331 (1931). The present ballot title does not meet this requirement. Most voters cast their vote with no more information than is contained in the ballot title. Publication and public discussion of the text

cannot cure the defects in a ballot title. Since it is the single most influencing factor utilized by most voters in casting their ballots, it must be complete enough to convey the major components of the proposal.

The ballot title commences: "A proposed act requiring lobbyist, as defined, to register with the Secretary of State if seeking to influence legislative or administrative actions of state government. . . ." Yet nowhere in the title is "lobbyist" defined or explained. By reading the text of the proposed act, one learns that indeed an ordinary citizen may be classified as a lobbyist by simply performing his civic duty to persuade his elected officials of the merits or faults of proposed legislation. The text defines a "lobbyist" as a person who "expends two hundred fifty dollars ($250) or more in a calendar quarter for lobbying. . . ." "Lobbying" is defined in the text to mean "communicating directly or soliciting others to communicate with any public official—with the purpose of influencing legislative action or administrative action."

The act does allow a citizen to spend two hundred and fifty dollars ($250), including postage, without being labeled a lobbyist, and consequently subjected to all the provisions of the act, provided the communication has first been filed with the Secretary of State or published in the news media. This smacks of censorship and prior restraint. It also is in direct violation of freedom of speech as guaranteed by the First Amendment.

It would take clairvoyant powers to glean from the popular name or ballot title the fact that any active citizen who spends some time and money in an effort to keep in close contact with public officials might well end up violating the law. It seems to me we ought to be encouraging the citizens and their public servants to communicate instead of constructing barriers between them.

Although perhaps unintended, the result is that only registered lobbyists will be allowed to sponsor "appreciation" dinners and receptions for legislators and other candidates and public officials. Since cities, civic clubs, churches and corporations are "persons" for the purposes of the act, they may be subject to the penalties of this law if they sponsor events with the intent of influencing public officials. Any group of persons who tries to block legislation or cause it to be enacted cannot expend more

than two hundred fifty dollars ($250) in their efforts without being subject to the provisions of the act. The mailing of a thousand letters or brochures would place the group in the class of "lobbyists."

All persons engaged in "lobbying," including ordinary taxpayers as well as professional lobbyists, will be subject to the prohibitions and penalties of the act. Average citizens who are interested in the performance of their public officials cannot possibly learn from the ballot title that they themselves are potential lobbyists. The term "lobbyist" as used by the media and perceived by the public means a person who works for pay rather than belief in a cause. It is a label which the ordinary person seeks to avoid. The act therefore will have a chilling effect on the relationship between the citizens and their public officials.

The intent behind this proposal is worthy of much praise. However, good intentions alone are insufficient to present this matter to the people for a vote.