Oscar Stilley Attorney at Law Central Mall Plaza Suite 516 5111 Rogers Avenue Fort Smith, AR 72903-2041
Dear Mr. Stilley:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 1993), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 POPULAR NAME TAXPAYERS BILL OF RIGHTS AMENDMENT BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION PROHIBITING THE IMPOSITION OR INCREASE OF ANY TAX, FEE, OR OTHER EXACTION, THE DIVERSION OF ANY FUEL TAXES OR OTHER REVENUE SOURCES PRESENTLY USED FOR ROAD OR BRIDGE CONSTRUCTION OR MAINTENANCE TO OTHER PURPOSES, OR THE BORROWING OF MONEY BY THE STATE OR ANY LOCAL GOVERNMENTAL ENTITY, WITHOUT THE APPROVAL OF A MAJORITY OF THE QUALIFIED ELECTORS, OF THE STATE OR THE AFFECTED LOCAL GOVERNMENTAL ENTITY, FREELY VOTING AT THEIR ABSOLUTE UNFETTERED DISCRETION UPON THE ISSUE AT A REGULARLY SCHEDULED STATEWIDE ELECTION; PROVIDING THAT THE REDUCTION OR ELIMINATION OF EXEMPTIONS OR CREDITS, OR THE CHANGING OF ANY LAW OR RULE WHICH RESULTS IN THE COLLECTION OF ADDITIONAL REVENUE FROM SOME OR ALL TAXPAYERS, SHALL BE DEEMED A TAX INCREASE TO THE EXTENT THAT SAID LAW RESULTS IN INCREASED TAX OR EXACTION; PROVIDING THAT THE PEOPLE MAY PROPOSE CHANGES IN THE MILLAGE RATES FOR AD VALOREM PROPERTY TAXES, FOR SCHOOLS, CITIES, COUNTIES, OR OTHER PURPOSES, BY THE INITIATIVE PROCESS, IN THE SAME MANNER AS OTHER LOCAL INITIATIVES, UPON THE SIGNATURES OF TEN PERCENT (10%) OF THE VOTERS WITHIN THE TAXING UNIT, CALCULATED AS FOLLOWS: FOR SCHOOL TAXES, TEN PERCENT (10%) OF THE WHOLE NUMBER OF VOTES TABULATED IN THE MOST RECENT SCHOOL ELECTIONS IN THE SCHOOL DISTRICT, UPON THE MILLAGE RATE; FOR CITIES, TEN PERCENT (10%) OF THE PERSONS WHO VOTED FOR MAYOR IN THE MOST RECENT GENERAL ELECTION FOR MAYOR; FOR COUNTY TAXES, TEN PERCENT (10%) OF THE VOTES CAST IN THE MOST RECENT GENERAL ELECTION FOR CIRCUIT CLERK; AS TO ANY OTHER TAXING UNIT, AND AS TO ANY TAXING UNIT IN WHICH THE MOST RECENT MEASURING RACE WAS NOT TABULATED, ON THE SIGNATURES OF THE LESSER OF TEN PERCENT (10%) OF THE WHOLE NUMBER OF VOTERS REGISTERED WITHIN THE TAXING UNIT, OR 100 TAXPAYING VOTERS OF THE TAXING UNIT; ESTABLISHING PROCEDURES FOR THE CALLING OF SUCH ELECTIONS; PROVIDING THAT IF MORE THAN ONE RATE OF TAX IS PROPOSED, THE HIGHEST RATE RECEIVING THE AFFIRMATIVE VOTE OF A MAJORITY OF THE VOTES CAST UPON THE QUESTION SHALL BE CERTIFIED AS THE LEGAL RATE; PROVIDING THAT ALL PROPOSED TAX INCREASES OR DECREASES SHALL BE PRESENTED TO THE VOTERS AT REGULARLY SCHEDULED STATEWIDE ELECTIONS, AND NOT OTHERWISE, AFTER THE HOLDING OF THE FIRST REGULARLY SCHEDULED STATEWIDE ELECTION IN WHICH THE TAX MIGHT BE INCREASED OR DECREASED, SUBSEQUENT TO THE EFFECTIVE DATE OF THIS AMENDMENT; PROVIDING RULES TO PREVENT THE IMPAIRMENT OF THE SECURITY OF BONDHOLDERS IN CASE OF THE REDUCTION OF MILLAGE RATES; PROVIDING THAT WHERE ALL OR NEARLY ALL THE PROPERTY TAXES WITHIN A COUNTY ARE ABOLISHED, THE POSITIONS OF TAX ASSESSOR AND TAX COLLECTOR SHALL BE ABOLISHED OR CONSOLIDATED WITH OTHER OFFICES, AS SOON AS PRACTICABLE; ABOLISHING ALL MINIMUM MILLAGE RATES; PROVIDING THAT NEITHER THE STATE NOR ITS SUBDIVISIONS SHALL BE REQUIRED TO MAINTAIN ANY PARTICULAR LEVEL OF EDUCATION FUNDING; PROVIDING THAT STATE FUNDS FOR PRIMARY AND SECONDARY EDUCATION SHALL BE DISTRIBUTED EQUALLY ON A PER PUPIL BASIS, WITH RESPECT TO ALL STUDENTS OF A GIVEN AGE GROUP, UNLESS OTHERWISE REQUIRED BY LAW SUPERIOR TO THIS CONSTITUTION; PROVIDING THAT FUNDING OF CHARTER SCHOOL OR VOUCHER STUDENTS, IF ANY, SHALL BE GOVERNED BY LAW OR CONSTITUTIONAL AMENDMENT, AS THE CASE MAY BE; AUTHORIZING SUPPLEMENTAL FUNDING FOR HANDICAPPED STUDENTS; PROHIBITING THE STATE FROM PUNISHING OR REWARDING VOTERS FOR THE TAXES THAT THEY VOTE OR FAIL TO VOTE UPON THEMSELVES; PROHIBITING THE USE OF PROPERTY TAX REVENUES FOR ANY TAXING UNIT EXCEPT THE TAXING UNIT FOR WHOM THE TAX IS IMPOSED, EXCEPT WHEN NECESSARY TO EQUITABLY DIVIDE PROPERTY TAX REVENUE BETWEEN TAXING UNITS, IN PROPORTION TO THEIR RESPECTIVE TAXABLE PROPERTY; ELIMINATING THE THREE (3) MILL MAXIMUM FOR COUNTY ROAD TAX MILLAGES, WHERE THE MILLAGE IN EXCESS OF THREE (3) MILLS IS APPROVED BY THE VOTERS AS PROVIDED HEREIN; PROVIDING THAT NOTHING HEREIN SHALL SUPERSEDE ANY ABOLITION OF THE PROPERTY TAX BY POPULAR VOTE ON INITIATIVE AMENDMENT, REGARDLESS OF THE RESPECTIVE VOTES UPON THE MEASURES; PROVIDING THAT COUNTYWIDE REAPPRAISALS SHALL BE MADE AT REASONABLE INTERVALS AS NECESSARY TO ENSURE EQUITY AMONG TAXPAYERS WITHIN A GIVEN COUNTY; PROVIDING THAT ALL COUNTYWIDE REAPPRAISALS BE MAILED SIMULTANEOUSLY; PROHIBITING THE IMPLEMENTATION OF ANY APPRAISAL, UNLESS PART OF A COUNTYWIDE REAPPRAISAL, OR FOR NEW OR NEWLY DISCOVERED OR ADDITIONAL PROPERTY, OR APPRAISALS MADE AT THE REQUEST OF THE PROPERTY OWNER, TO WHICH THE OWNER SHALL BE ENTITLED WHEN THERE IS A REASONABLE BASIS FOR BELIEVING THAT THE VALUE OF THE PROPERTY HAS DECLINED; ABOLISHING THE AD VALOREM PROPERTY TAX ON UTILITY PROPERTY, EFFECTIVE JANUARY 1, 2003, EXCEPT THAT RELATING TO BONDED INDEBTEDNESS LAWFULLY ISSUED PRIOR TO JANUARY 1, 2000; DEFINING UTILITY PROPERTY AS THAT PROPERTY ACTUALLY USED IN THE PRODUCTION OR DISTRIBUTION OF ELECTRICITY, WATER, GAS, STEAM, OR CABLE, TELEPHONE, OR OTHER COMMUNICATIONS SERVICES; PROVIDING THAT THE ABOLISHED AD VALOREM PROPERTY TAX ON UTILITY PROPERTY MAY BE REPLACED BY A SALES TAX ON THE USE OF UTILITIES, TO THE EXTENT ALREADY SUBJECT TO THE ARKANSAS SALES AND USE TAX, WHERE APPROVED BY THE ELECTORS OF THE AFFECTED TAXING UNIT, ACTUALLY VOTING UPON THE ISSUE AT A REGULARLY SCHEDULED STATEWIDE ELECTION; PROVIDING FOR A THREE (3) YEAR STATUTE OF LIMITATIONS FOR THE CITIZENS' RECOVERY BACK OF ILLEGAL EXACTIONS, UNLESS A LONGER PERIOD IS PRESCRIBED BY STATUTE OR CONSTITUTIONAL PROVISION, AND FOR A THREE (3) YEAR STATUTE OF LIMITATIONS ON ALL CIVIL, CRIMINAL, OR OTHER ACTIONS BY ANY STATE OR LOCAL GOVERNMENT TO COLLECT DELINQUENT TAXES; ABOLISHING THE RULE AGAINST RECOVERY BACK OF VOLUNTARY PAYMENTS, AS APPLIED TO ILLEGAL EXACTIONS; PROSCRIBING THE PUNISHMENT OF TAXPAYERS FOR THE REFUSAL TO PAY ANY TAX DECLARED BY ANY CIRCUIT OR CHANCERY COURT TO BE VOLUNTARY, UNLESS THE ARKANSAS SUPREME COURT SUBSEQUENTLY RULES THAT THE PAYMENT OF ALL SUCH TAX IS INVOLUNTARY, PRIOR TO THE DUE DATE FOR THE TAX; PROVIDING THAT IN ANY ILLEGAL EXACTION LAWSUIT, ALL PERSONS SIMILARLY SITUATED TO THE NAMED PLAINTIFF SHALL BE ENTITLED TO RECOVER BACK ANY SUMS FOUND TO HAVE BEEN ILLEGALLY EXACTED, LESS COSTS AND REASONABLE ATTORNEY'S FEES; DEFINING ILLEGAL EXACTION TO INCLUDE ILLEGAL, ERRONEOUS, OR EXCESSIVE IMPOSITION, LEVYING, ASSESSMENT, OR COLLECTION OF TAX OR ENFORCED GOVERNMENTAL OR QUASI GOVERNMENTAL EXACTIONS OF ANY KIND WHATSOEVER, PROVIDED, HOWEVER, THAT SUCH SHALL NOT INCLUDE ANY LEGAL TAX IF THE TAXING AUTHORITY REASONABLY ATTEMPTED TO COMPLY WITH ALL LAWS, REGULATIONS, AND REQUIREMENTS FOR THE ASSESSMENT OR COLLECTION OF TAX, AND THE CIRCUMSTANCES ARE SUCH THAT THE TAXPAYERS IN FAIRNESS AND EQUITY OUGHT NOT TO ESCAPE LIABILITY FOR THE TAX; PROVIDING THAT SOVEREIGN IMMUNITY, FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES, FAILURE TO APPROPRIATE MONEY FOR REPAYMENT, OR PAYMENT OVER TO ANOTHER ENTITY, CONSTITUTE NO DEFENSES TO AN ACTION FOR ILLEGAL EXACTION; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING PROVISIONS; PROVIDING THAT THE AMENDMENT IS SELF EXECUTING AND SHALL TAKE EFFECT IMMEDIATELY, EXCEPT AS OTHERWISE PROVIDED; PROVIDING THAT ALL PROTECTIONS FOR THE TAXPAYER, RELATED TO LITIGATION, SHALL APPLY TO ALL ACTIONS BROUGHT TO JUDGMENT AFTER THE DATE OF PASSAGE OF THIS AMENDMENT; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Finally, there is precedent for the court's rejection of a ballot title based essentially upon the expansiveness of the text of the proposal. In the case of Page v. McCuen, 318 Ark. 342, 884 S.W.2d 951 (1994), the Arkansas Supreme Court found that the proposal was "so all-encompassing" and "so expansive" that it precluded an acceptable ballot title (318 Ark. At 347); that is, all of the substantive and important provisions could not be included without yielding a ballot title so "complex, detailed and lengthy" that voters would be unable to vote intelligently with the time allowed in the voting booth. Id. at 345, 347. See alsoCrochet v. Priest, 326 Ark. 338, 931 S.W.2d 338 (1996). The court has held that while the length of a ballot title is not a controlling factor, it can be a major one. See Christian Civic Action Committee v.McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994), citing Dust v. Riviere,277 Ark. 1, 638 S.W.2d 663 (1982) and Newton v. Hall, 196 Ark. 930,120 S.W.2d 364 (1938). See also more recently, Crochet v. Priest,326 Ark. 338, 931 S.W.2d 338 (1996) (1000 word title not invalid on length alone, but was invalid when viewed in conjunction with misleading tendencies and omissions).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under these precepts, I must reject both your popular name and ballot title under A.C.A. § 7-9-107 and instruct your to redesign your proposed popular name, ballot title, and measure.
In my judgment, your proposed popular name, the "TAXPAYERS BILL OF RIGHTS AMENDMENT," is misleading and tinged with the type of partisan coloring that would lead the Arkansas Supreme Court to reject it. See e.g.,Crochet v. Priest, supra, (words "video terminal games," as used in popular name and ballot title was tinged with partisan coloring); ArkansasWomen's Political Caucus v. Riviere, 283 Ark. 463, 677 S.W.2d 846 (1984) (popular name "Unborn Child Amendment" was a prohibited catch-phrase or slogan that attempted to give partisan coloring to the merits of the proposal); Johnson v. Hall, Secretary of State, 229 Ark. 400,316 S.W.2d 194 (1958) (popular name "An Amendment Prohibiting Operation of Trains with Unsafe and Inadequate Crews" rejected as partisan); Moore v.Hall, Secretary of State, 229 Ark. 411, 316 S.W.2d 207 (1958) ("Freedom to Hire Amendment" rejected as partisan); Bradley v. Hall, Secretary of State,220 Ark. 925, 251 S.W.2d 470 (1952) (word "modern" in popular name "Modern Consumer Credit Amendment" lent partisan coloring to the merits of the proposal); and Jackson v. Clark, 288 Ark. 192, 703 S.W.2d 454
(1986) (Attorney General was correct to substitute other words for "closed-door deal-making" and "influence-peddling" in popular name).
In my judgment, the popular name "TAXPAYERS BILL OF RIGHTS" is a catch phrase or slogan calculated to lend partisan coloring to the merits of your proposal. In my view, it will not pass muster in the event of a challenge before the Arkansas Supreme Court.
While I am empowered to substitute a more suitable and correct popular name for your measure (A.C.A. § 7-9-107 (b)), I may also reject it, along with the entire ballot title and petition, stating my reasons therefor, and instruct you to redesign the proposed measure, ballot title and popular name in a manner that would not be misleading. Because I find that I must also reject your ballot title, I have chosen to exercise this option under A.C.A. § 7-9-107 (c).
My primary, but not single objection to your proposed ballot title is its length. By a computer count, your proposed title runs 1166 words. The Arkansas Supreme Court has never upheld a title of this length. While length alone is not a controlling factor, it is a major factor, and can become controlling when viewed in conjunction with the complexity of a measure, and any omissions or misleading tendencies in the title. SeeCrochet v. Priest, supra. Although the court in Crochet stated that a title containing 1000 words was not invalid on its length alone, it was invalid when viewed in conjunction with omissions and misleading tendencies in the title.
The longest title approved by the Arkansas Supreme Court contained 900 words. Bailey v. Hall, Secretary of State, 198 Ark. 815, 131 S.W.2d 635
(1939). There were no serious omissions or fallacious statements in that ballot title, which summarized a referendum on a workers' compensation law passed by the General Assembly. In the years after the Bailey
decision, however, the court has struck down titles of lesser length, when accompanied by any omissions or misleading tendencies. See, e.g.,Crocket v. Priest, supra (1,000 word title struck down); Scott v.Priest, 326 Ark. 328, 932 S.W.2d 746 (1996) (550 word title not invalid on length alone, but this factor plus serious omissions defeated title);Christian Civic Action Committee v. McCuen, supra (709 word title struck down with length as a major factor when viewed in light of other defects); and Dust v. Riviere, supra (727 word title invalid as too lengthy, complex, misleading and confusing). See also, Hoban v. Hall,Secretary of State, 229 Ark. 416, 316 S.W.2d 185 (1958) (text of proposed measure itself was of such extreme length and touched upon so many different subjects that ballot title did not sufficiently cover its provisions); and Newton v. Hall, Secretary of State, supra (735 word title upheld, but noted length as a potential problem).
The most recent ballot title upheld by the Arkansas Supreme Court contained 482 words. See Parker v. Priest, 326 Ark. 123, 930 S.W.2d 322
(1996). The court has, as noted previously, upheld titles as long as 900 words (Bailey v. Hall), and 735 words (Newton v. Hall). These decisions, however, were each decided decades ago, and more recent decisions appear to scrutinize the length of such proposals more closely. In my judgment, your proposed ballot title would not withstand scrutiny before the Arkansas Supreme Court due to its length (1166 words), when viewed in conjunction with the complexity, number of separate issues presented, and misleading tendencies.
Under such circumstances, one option, under the relevant statute (A.C.A. § 7-9-107), would be for me to substitute a more suitable and correct ballot title for your measure. A number of ambiguities arising from thetext of your proposed measure, however, make my substitution of a ballot title for this measure impossible. Such ambiguities include, but are not necessarily limited to, the following:
 1) An ambiguity exists in my opinion as to what extent the term "local government entity," as used in Section 1 of your proposed amendment, includes any type of special assessment districts or any regional entity. A further ambiguity is presented by use of the words" any . . . fee, or . . . exaction." This expansive language could include a prohibition against the General Assembly, without an election, imposing or increasing fees on everything from U.C.C. filings, to court costs, to child support collection fees to probate matters, or even fines for criminal conduct. If this is indeed the expansive effect of your measure, this fact must be noted or highlighted in the ballot title for your measure.
 2) An ambiguity exists in Section 2 with regard to the words" tax-funded entity." Such entities are prohibited, under your proposal, from borrowing money without the approval of the "qualified electors thereof." An ambiguity exists as to what extent the phrase "tax-funded entity" applies to private entities which are funded to some degree with tax dollars. If your measure applies to private entities, this would be a dramatic change in current law that must be reflected in a ballot title for your measure.
 3) Ambiguities arising from Section 3 of your proposed amendment include: 1) the use of the term "taxpaying voters" in Section 3(a) (does this refer to property taxes, sales taxes or to the payment of any tax in general?); 2) confusing language used in the latter part of Section 3(d); and 3) whether Section 3(e) gives the assessor and collector of a county the legislative power to set a millage rate sufficient to pay bonded indebtedness.
 4) An ambiguity exists in Section 5 of your proposed amendment in that it abolishes ad valorem taxes on utility property" except to the extent that such tax relates to lawfully issued bonded indebtedness incurred prior to January 1, 2001." An ambiguity exists in the use of the words" relates to." A general city, county, or school district millage levied against utility property, as well as other types of property, may be allocated in some way to the payment of bonded indebtedness. Does this provision abolish taxes on utility property unless those taxes are legally or contractually obligated to the payment of bonded debt, and/or must the utility continue to pay some type of proportional share of taxes towards all bonded debt? What does it mean for the taxes to" relate to" bonded debt and how is the tax calculated in such case?
 5) An ambiguity exists in Section 6(a) of your proposed amendment with regard to the proposed statute of limitation for recovery of illegal taxes. The proposed limit is "three years from the filing of suit." I assume the language used applies a three-year statute of limitation within which suit must be filed. The ambiguity concerns the event that triggers the running of the statute. This important fact must be summarized in a ballot title. I cannot, from the text of your amendment, determine this event.
 A separate ambiguity in Section 6(b) of your amendment appears in the first sentence, with regard to a lower court holding of voluntariness and a Supreme Court ruling of involuntariness. There may be a typographical error in this provision. In any event, I cannot determine its effect.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure, ballot title and popular name. See
A.C.A. § 7-9-107(c). You may, after clarification of the issues discussed above, resubmit your proposed amendment, along with a new proposed popular name and ballot title, at your convenience. I will be pleased to perform my statutory duties in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP/cyh