Mr. Barry Emigh 1720 Arrowhead Road, Apt. O North Little Rock, AR 72118
Dear Mr. Emigh:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution.
 Popular Name RIVER BOAT GAMBLING, CHARITABLE RAFFLES AND BINGO, SCHOLARSHIPS AND ABOLISH FOOD TAX Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO EXEMPT FOOD ITEMS FROM STATE AND LOCAL GROSS RECEIPT SALES TAXES; DEFINING FOOD ITEMS AS ANY ITEM THAT IS EDIBLE, INCLUDUNG [SIC] DRINKABLE FOOD ITEMS AND NON-PRESCRIPTION VITAMIN SUPPLEMENTS NOT CONTAINING ALCOHOL; PROVIDING, HOWEVER, THAT NOTHING IN THE AMENDMENT SHALL AFFECT: 1) THE "ARKANSAS SOFT DRINK TAX ACT" OR STATE AND LOCAL GROSS RECEIPT SALES TAXES ON ITEMS INCLUDED IN THE "ARKANSAS SOFT DRINK TAX ACT;" 2) ANY TAXES ON PREPARED RESTAURANT FOODS OR FOOD SERVED BY BUSINESSES SIMILAR TO RESTAURANTS AS DESCRIBED IN A.C.A. § 25-75-601 TO -618 AND A.C.A. § 25-75-701 (COMMONLY REFERRED TO AS THE "HAMBURGER TAX"); OR 3) ANY TAX ON ANY ALCOHOLIC BEVERAGE; EXEMPTING ANY ITEMS HEREAFTER EXCLUDED FROM THE ARKANSAS SOFT DRINK TAX ACT FROM STATE AND LOCAL SALES TAXES; TO PROVIDE THE OPERATION OF BINGO AS THE RISKING OF MONEY ON A GAME OF CHANCE PLAYED WITH CARDS HAVING NUMBERED SQUARES CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM AND WON BY COVERING THE NUMBERS IN ANY SUCH MANNER AS SHALL BE REQUESTED BY THE OPERATOR OF THE GAME AND RAFFLES AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE AS VOLUNTARY OPTIONS OF OPERATION BY NON PROFIT ORGANIZATIONS; TO PROVIDE THE OPERATION OF GAMBLING AND GAMING DEVICES AS THE RISKING OF MONEY BETWEEN TWO OR MORE PERSONS ON A CHANCE, WHERE ONE MUST BE LOSER AND THE OTHER GAINER WITH THE USE OF COMMONLY CALLED GAMING DEVICES AND GAMBLING TO INCLUDE ANY KIND OF ROULETTE WHEEL, SLOT MACHINES OF ANY KIND, GAMING TABLES OF ANY KIND FOR THE USE OF CARDS USED IN ANY MANNER, GAMING TABLES OF ANY KIND FOR THE USE OF DICE USED IN ANY MANNER AS A VOLUNTARY OPTION TO OPERATE ANY ONE OR MORE OR ALL OF THE AFOREMENTIONED GAMING DEVICES AND GAMBLING ON WATER VESSELS ON NAVIGABLE WATER WAYS AND PUBLIC LAKES BY THE "ARKANSAS RIVER BOAT CASINO COMPANY"; TO PROVIDE NO PERSON UNDER THE AGE OF EIGHTEEN SHALL PURCHASE A RAFFLE TICKET NOR PARTICIPATE IN BINGO OR CASINO GAMING; TO PROVIDE NO RESTRICTION ON THE TIME NOR DAYS FOR OPERATING GAMBLING AND GAMING DEVICES ON A VESSEL OPERATED BY THE ARKANSAS RIVER BOAT CASINO COMPANY; TO PROVIDE FOR THE SALE AND SERVICE OF ALCOHOLIC BEVERAGES DURING THE OPERATING TIME OF GAMBLING AND GAMING DEVICES ON WATER VESSELS OPERATED BY THE ARKANSAS RIVER BOAT CASINO COMPANY; TO PROVIDE FOR THE LEGAL SHIPMENT OF GAMBLING DEVICES; TO PROVIDE FOR THE ANNUAL AUDITING OF THE ARKANSAS RIVER BOAT CASINO COMPANY BOOKS, RECORDS, AND FINANCIAL AFFAIRS; TO PROVIDE THE ARKANSAS RIVER BOAT CASINO COMPANY SHALL NOT OPERATE GAMBLING AND GAMING DEVICES ON MORE THAN THREE WATER VESSELS WITHIN A COUNTY; TO PROVIDE THE WATER VESSELS OPERATED FOR THE PURPOSE OF GAMBLING AND GAMING DEVICES SHALL NOT EXCEED EIGHT HUNDRED FEET IN OVER ALL LENGTH NOR ONE HUNDRED FEED IN WIDTH; TO PROVIDE AN EIGHTEEN PERCENT TAX ON THE NET GAMING REVENUES TO BE ALLOCATED AS FOLLOWS: SIXTY TWO PERCENT OF THE NET GAMING REVENUE TAX BE PLACED IN THE ARKANSAS SCHOLASTIC TRUST FUND; FOUR PERCENT OF THE NET GAMING REVENUE TAX SHALL BE PAID TO THE STATE; FOUR PERCENT TO THE COUNTY AND DIVIDED EQUALLY IF GAMBLING IS OPERATED WITHIN THE CITY LIMIT OF A CITY; EIGHT PERCENT OF THE NET GAMING REVENUE TAX BE DIVIDED EQAULLY [SIC] AND DISTRIBUTED AMONG THOSE COUNTIES NOT HAVING A GAMING OPERATION WITHIN THEIR JURISDICTION; TWENTY TWO PERCENT TO TO [SIC] BE DIVIDED AND DISTRIBUTED EQUALLY PER STUDENT TO EACH SCHOOL DISTRICT OF WHICH FIFTY PERCENT SHALL BE USED FOR TEACHER PAY; TO PROVIDE NO TAX, NOR FEES ON THE OPERATION OF BINGO AND RAFFLES BY A NONPROFIT ORGANIZATION; TO PROVIDE NO OTHER TAXES, NOR FEES ON THE PROPERTY, FIXTURES, GROSS INCOME AND NET GAMING REVENUES OF THE ARKANSAS RIVER BOAT CASINO COMPANY THAN THOSE SPECIFIED HEREIN; TO PROVIDE NO NEW FEES, NOR LICENSES OF ANY SORT, NOR NEW TAXES, NOR INCREASE ON THE NET GAMING REVENUES ON THE OPERATION OF ANY GAMING DEVICE AND GAMBLING OPERATED BY THE ARKANSAS RIVER BOAT CASINO COMPANY AS PROVIDED IN THIS AMENDMENT WITHOUT A THREE QUARTER APPROVAL BY BOTH HOUSES OF THE GENERAL ASSEMBLY; TO PROVIDE FOR THE SEPARATE RECEIPT AND ACCOUNTING BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION OF THE EIGHT PECENT [SIC] NET GAMING REVENUE TAX TO BE DEPOSITED IN THE ARKANSAS SCHOLASTIC TRUST FUND; REQUIRING THE IMMEDIATE DEPOSIT OF SUCH MONEYS IN THE ARKANSAS SCHOLASTIC TRUST FUND; A FUND CREATED AS A PUBLIC TRUST SEPARATE AND APART FROM THE STATE TREASURY TO BE ADMINISTERED BY THE STATE BOARD OF FINANCE; AMENDING A.C.A. § 19-4-803 TO EXEMPT THE ARKANSAS SCHOLASTIC TRUST FUND FROM THE REQUIREMENTS OF AN APPROPRIATION; EMPOWERING THE STATE BOARD OF FINANCE TO MANAGE AND INVEST THE TRUST FUND IN COMPLIANCE WITH THE PRUDENT INVESTOR RULE AND OTHER APPLICABLE STANDARDS IN A.C.A. §§ 24-3-408, -414, -415, -417 TO -425 AND A.C.A. § 19-3-518; REQUIRING SUCH INVESTMENTS AND EARNINGS TO BE KEPT AS DISTINCT CASH FUNDS SEPARATE AND APART FROM THE STATE TREASURY; EMPOWERING THE STATE BOARD OF FINANCE TO HIRE PROFESSIONALS TO ASSIST IN THE INVESTMENT OF THE TRUST FUND AND AUTHORIZING THE BOARD TO USE INVESTMENT EARNINGS FROM THE TRUST FUND TO COMPENSATE SUCH PROFESSIONALS; AUTHORIZING THE STATE BOARD OF FINANCE TO DISTRIBUTE FIFTY (50%) PERCENT OF THE PREVIOUS ANNUAL INVESTMENT EARNINGS FROM THE TRUST FUND FOR SCHOLOARSHIPS [SIC], OF WHICH 40% SHALL BE DISTRIBUTED FOR THE FALL SEASON OF CLASSES, 40% FOR THE WINTER SESSION, AND 20% FOR THE SUMMER SESSION; REQUIRING REDEPOSIT IN THE TRUST FUND OF INVESTMENT EARNINGS NOT USED FOR SCHOLARSHIPS OR EXPENSES OF ADMINISTRATION; PROVIDING FOR APPLICATION FOR SCHOLARSHIPS TO BE SUBMITTED TO THE STATE BOARD OF FINANCE TO ANY UNIVERSITY OR COLLEGE WITHIN THE STATE; REQUIRING THE APPLICATION TO STATE THE FULL AMOUNT OF TUITION COST FOR THE CHOSEN UNIVERSITY OR COLLEGE FOR EACH SESSION OF CLASSES, THE AMOUNT OF ANY OTHER FINANCIAL AID, GRANTS OR SCHOLARSHIPS RECEIVED BY THE INDIVIDUAL, THE INDIVIDUAL'S EARNED GROSS INCOME FORM THE PREVIOUS YEAR, AND THE BALANCE OF ANY INDIVIDUAL AND JOINT BANK ACCOUNTS; SETTING THE DEALINES [SIC] FOR FILING APPLICATIONS AS NOT MORE THAN 90 WORKING DAYS, NOR LESS THAN 15 WORKING DAYS PRIOR TO: THE LAST DAY OF AUGUST FOR THE FALL SESSION OF CLASSES, THE LAST DAY OF DECEMBER FOR THE WINTER SESSION, AND THE LAST DAY OF MAY FOR THE SUMMER SESSION; REQUIRING DISTRIBUTION OF FULL-TUITION SCHOLARSHIPS TO ANY UNIVERSITY AND COLLEGE IN THE STATE FIRST, TO THOSE PERSONS WITH THE LOWEST TOTAL AMOUNT BY ADDING BOTH THE AMOUNT OF TUITION PAYMENT (AFTER DEDUCTIONS FOR OTHER FINANCIAL AID, GRANTS AND SCHOLARSHIPS) AND THE INDIVIDUAL'S PREVIOUS YEAR TOTAL GROSS INCOME; REQUIRING THE STATE BOARD OF FINANCE TO DEDUCT THE TOTAL AMOUNT OF THE PERSON'S INDIVIDUAL BANK ACCOUNTS OVER THE AMOUNT OF $2,500 FROM THE TUITION PAYMENT RECEIVED; REQUIRING THE STATE OF FINANCE TO DEDUCT 50% OF THE TOTAL AMOUNT OF THE PERSON'S JOINTLY HELD BANK ACCOUNTS OVER THE AMOUNT OF $5,000 FROM THE TUITION PAYMENT RECEIVED; PROHIBITING THE STATE BOARD OF FINANCE FORM MAKING ANY PAYMENTS FOR ANY PERSON TO RETAKE ANY FAILED UNIVERSITY OR COLLEGE CLASS; REQUIRING THE STATE BOARD OF FINANCE TO NOTIFY APPLICANTS OF THE AMOUNT OF THEIR TUITION PAYMENT AND MAKE SUCH AMOUNT PAYABLE TO THE UNIVERSITY OR COLLEGE NOT MORE THAN 15 WORKING DAYS AFTER THE FINAL SUBMISSION OF AN APPLICATION; TO PROVIDE THIS AMENDMENT TO BE SELF EXECUTING; TO PROVIDE SEVERABILITY AND TO REPEAL ANY STATUTES AND LAWS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed ballot title and popular name due to several ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of these ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. §7-9-107(b).
I refer, in a non-exhaustive list, to the following ambiguities:
 1. Section 8 (1)(c) states with regard to the 4% required county general fund allocation that this revenue "shall be paid to the county's general fund in which the Arkansas River Boat Casino Company is operating. . . ." (Emphasis added). It states further that "this revenue shall be divided equally between the county and city" if the gambling and gaming operations "are operated within the city limits of any city. . . ." Several ambiguities arise under this language. First, it is unclear how this county general fund allocation will be made if the Casino Company operates in more than one county, which it presumably may do. Additionally, although this language appears to contemplate gambling operations within more that one city in a county, it is unclear how the distribution will occur when more than one city and more than one county are involved.
 2. Section 8 (1) (d) states that 8% of the "net gaming revenues" shall be distributed to counties without gaming operations. This may simply be a typographical error. If this is actually intended to refer to 8% of the" net gaming revenue tax," this should be corrected.
 3. Section 8 (1)(e) requires that 22% of the net gaming revenue tax "shall be divided and distributed equally per student to each public school district. . . ." I cannot determine the intent of this provision. I am uncertain whether the intent is to divide this allocation equally among school districts, or whether student attendance is to somehow form the basis for the distribution. I am thus at a loss as to how to summarize your proposal on this point.
 4. Section 10 (1) (f), in defining "net gaming revenues," states on the one hand that the total is to be measured" on an annual basis," but it includes in the calculation amounts paid to fund losses to patrons "over several years." I cannot reconcile this language. The vague reference to "several years" may also give the voter serious ground for reflection.
 5. Section 11 (1) is ambiguous in referring to "Eight (8%) percent of the net gaming revenue tax from the Arkansas River Boat Casino Company as provided and authorized in Section 4 (1a). . . ." I assume, although this should be clarified, that the referenced "Section 4 (1a)" is actually Section 8 (1) (a), as Section 4 deals with taxes on alcoholic beverages. However, the reference to "eight (8%) percent" of the tax on gaming revenues remains ambiguous. I cannot determine what this refers to. Section 8 (1) (a) requires that "[s]ixty-two (62%) percent of the net gaming revenue tax" shall be paid to the Department of Finance and Administration for immediate deposit into the Scholastic Trust Fund. (Emphasis added). If this is the correct reference, this point should be clarified.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General