Robert W. Buchholz Buchholz Sassin, P.L.L.C. 4000 Republic Center, Tower II 325 N. St. Paul Street Dallas, TX 75201
Dear Mr. Buchholz:
The following is a recertification of a popular name and ballot title for a proposed constitutional amendment. A separate party, Mr. Tommy Goodwin, submitted an original request for certification of a popular name and ballot title for the measure at issue, which resulted in issuance of Opinion 99-176. In that Opinion, I approved the submitted popular name, but rejected the submitted ballot title due to an unresolved ambiguity in the text of the measure. After clarification of the ambiguity, you resubmitted a proposed popular name and ballot title for my review. This resulted in the issuance of Opinion 99-216. In that Opinion, I again approved the submitted popular name, but I substituted a more suitable, complete and accurate ballot title for the one you proposed. You have now elected to make several changes in the text of your proposed amendment, and have thus again submitted a proposed popular name and ballot title for my certification:
 POPULAR NAME AN AMENDMENT TO ESTABLISH A STATE LOTTERY; TO PERMIT CHARITABLE BINGO GAMES AND RAFFLES; TO ALLOW ARKANSAS CASINO CORPORATION TO OWN AND OPERATE SIX CASINO GAMBLING ESTABLISHMENTS ONE EACH IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN AND BOONE COUNTIES; AND TO ESTABLISH THE ARKANSAS EDUCATIONAL TRUST FUND AND THE ARKANSAS GAMING COMMISSION.
 BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO: 1) ESTABLISH A STATE-RUN LOTTERY, TO BE OPERATED AND REGULATED BY THE ARKANSAS GAMING COMMISSION; 2) AUTHORIZE CHARITABLE BINGO AND RAFFLES IN ARKANSAS AS REGULATED BY THE ARKANSAS GAMING COMMISSION; AND 3) IMMEDIATELY AUTHORIZED [SIC] SIX CASINO GAMBLING ESTABLISHMENTS, TO BE OWNED AND OPERATED BY "ARKANSAS CASINO CORPORATION" (A PRIVATE FOR-PROFIT CORPORATION), ONE EACH TO BE LOCATED IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN AND BOONE COUNTIES, THE OPERATIONS OF WHICH SHALL BE AUDITED BY THE ARKANSAS GAMING COMMISSION FOR THE SOLE PURPOSE OF INSURING THAT CASINO TAXES DUE TO THE STATE ARE PAID, BUT WHICH SHALL NOT OTHERWISE BE REGULATED BY THE GAMING COMMISSION; REQUIRING THE GENERAL ASSEMBLY TO ENACT LEGISLATION SO THAT THE STATE LOTTERY AND CHARITABLE BINGO AND RAFFLES MAY BEGIN AT THE EARLIEST POSSIBLE TIME, BUT PROHIBITING THE GENERAL ASSEMBLY FROM ENACTING ANY LEGISLATION REGARDING CASINO GAMING; PROHIBITING CASINO GAMING IN ANY OTHER COUNTY OR AT ANY OTHER THAN THE LOCATIONS OPERATED BY ARKANSAS CASINO CORPORATION; PROHIBITING PERSONS UNDER THE AGE OF 21 FROM PURCHASING LOTTERY TICKETS OR PARTICIPATING IN BINGO, RAFFLES OR CASINO GAMING; REQUIRING AT LEAST 50% OF STATE LOTTERY REVENUE TO BE DISTRIBUTED AS PRIZES, AT LEAST 45% OF LOTTERY REVENUE TO BE PAID TO THE ARKANSAS EDUCATIONAL TRUST FUND AND NO MORE THAN 5% FOR THE EXPENSES OF THE LOTTERY; REQUIRING PAYMENT OF A 15% TAX ON THE" NET GAMING REVENUE" (AS DEFINED) OF ANY CASINO, TO BE ALLOCATED AS FOLLOWS: 80% TO THE STATE'S GENERAL FUND FOR THE PURPOSE OF REDUCING OR ELIMINATING THE GROSS RECEIPTS TAX ON FOOD PURCHASED IN A RETAIL FOOD STORE, WITH ANY EXCESS RETURNED TO THE GENERAL FUND, 10% TO THE ARKANSAS EDUCATIONAL TRUST FUND; 5% OF THE TAX OF ONE CASINO TO THE COUNTY IN WHICH THAT CASINO IS LOCATED, IF THE CASINO IS IN A CITY LIMITS THEN THIS REVENUE SHALL BE DIVIDED EQUALLY BETWEEN THE COUNTY AND THE CITY, 1% TO THE ARKANSAS COMPULSIVE GAMBLING FOUNDATION FOR THE TREATMENT AND PREVENTION OF GAMBLING ADDICTION; 4% TO THE STATE'S GENERAL FUND FOR THE OPERATIONAL COSTS OF THE ARKANSAS GAMING COMMISSION; PROHIBITING THE GENERAL ASSEMBLY FROM REDUCING LOCAL OR STATE FUNDING BECAUSE OF CASINO TAX REVENUE; PROHIBITING ANY OTHER STATE OR LOCAL TAXES, FEES OR ASSESSMENTS ON THE FURNITURE, FIXTURES, EQUIPMENT, PROPERTY, BUSINESS OPERATION, GROSS REVENUES, NET GAMING REVENUES OR INCOME OF ARKANSAS CASINO CORPORATION FROM OR USED IN CASINO GAMING; ESTABLISHING THE ARKANSAS EDUCATIONAL TRUST FUND, REGULATED AND ADMINISTERED BY THE DEPARTMENT OF HIGHER EDUCATION, TO PROVIDE GRANTS TO QUALIFIED HIGH SCHOOL GRADUATES FOR POST-SECONDARY EDUCATION; DEFINING POST-SECONDARY EDUCATION AS THE PURSUIT OF AN UNDERGRADUATE DEGREE AT A PUBLIC OR PRIVATE UNIVERSITY, COLLEGE, COMMUNITY COLLEGE OR A DEGREE FROM A VOCATIONAL-TECHNICAL SCHOOL; REQUIRING NOT LESS THAN 24% FOR [SIC] THE EDUCATIONAL TRUST FUND TO BE USED TO EXPAND PRE-KINDERGARTEN EDUCATIONAL PROGRAMS AND TUTORIAL PROGRAMS FOR PRIMARY AND SECONDARY STUDENTS; CREATING THE ARKANSAS GAMING COMMISSION, WHOSE MEMBERS SHALL BE APPOINTED BY THE GOVERNOR WITH THE ADVICE AND CONSENT OF THE SENATE, WHO SHALL 1) ESTABLISH AND OPERATE THE STATE LOTTERY, 2) SHALL LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES; AND 3) AUDIT THE OPERATIONS OF THE CASINOS FOR THE SOLE PURPOSE OF INSURING THAT ALL CASINO TAXES DUE TO THE STATE ARE PAID; PROVIDING FOR JUDICIAL REVIEW OF THE COMMISSION'S DECISIONS OR ACTIONS; ALLOWING A CASINO TO OPERATE ANY DAY FOR ANY PORTION OF THE DAY; ALLOWING THE SELLING OR FREE FURNISHING OF ALCOHOLIC BEVERAGES IN CASINOS DURING ALL HOURS THEY OPERATE BUT OTHERWISE REQUIRING ADHERENCE TO ALL ALCOHOLIC BEVERAGE CONTROL BOARD REGULATIONS; PERMITTING THE SHIPMENT OF GAMBLING DEVICES INTO AUTHORIZED COUNTIES FOR PURPOSES OF FEDERAL LAW; RENDERING THE PROVISIONS OF THE AMENDMENT SEVERABLE; DECLARING INAPPLICABLE ALL CONSTITUTIONAL PROVISIONS AND LAWS TO THE EXTENT THEY CONFLICT WITH THE AMENDMENT; AND DECLARING THE AMENDMENT OPERATIVE UPON PASSAGE.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may, if he can do so, substitute and certify a more suitable and correct popular name and ballot title, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Applying the above precepts, it is my conclusion, consistent with Opinions99-216 and 99-176, that the submitted popular name should be approved. In my judgment, however, minor corrections to the submitted ballot title are necessary to make it more complete, suitable and accurate. The following ballot title is hereby substituted and certified in order to insure that, when construed together, the popular name and ballot title accurately set forth the purpose of the proposed amendment:
 BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION TO: 1) ESTABLISH A STATE-RUN LOTTERY, TO BE OPERATED AND REGULATED BY THE ARKANSAS GAMING COMMISSION; 2) AUTHORIZE CHARITABLE BINGO AND RAFFLES IN ARKANSAS AS REGULATED BY THE ARKANSAS GAMING COMMISSION; AND 3) IMMEDIATELY AUTHORIZE SIX CASINO GAMBLING ESTABLISHMENTS, TO BE OWNED AND OPERATED BY" ARKANSAS CASINO CORPORATION" (A PRIVATE FOR-PROFIT CORPORATION), ONE EACH TO BE LOCATED IN SEBASTIAN, PULASKI, GARLAND, MILLER, CRITTENDEN AND BOONE COUNTIES, THE OPERATIONS OF WHICH SHALL BE AUDITED BY THE ARKANSAS GAMING COMMISSION FOR THE SOLE PURPOSE OF INSURING THAT CASINO TAXES DUE TO THE STATE ARE PAID, BUT WHICH SHALL NOT OTHERWISE BE REGULATED BY THE GAMING COMMISSION; REQUIRING THE GENERAL ASSEMBLY TO ENACT LEGISLATION SO THAT THE STATE LOTTERY AND CHARITABLE BINGO AND RAFFLES MAY BEGIN AT THE EARLIEST POSSIBLE TIME, BUT PROHIBITING THE GENERAL ASSEMBLY FROM ENACTING ANY LEGISLATION REGARDING CASINO GAMING; PROHIBITING CASINO GAMING IN ANY OTHER COUNTY OR AT ANY OTHER THAN THE LOCATIONS OPERATED BY ARKANSAS CASINO CORPORATION; PROHIBITING PERSONS UNDER THE AGE OF 21 FROM PURCHASING LOTTERY TICKETS OR PARTICIPATING IN BINGO, RAFFLES OR CASINO GAMING; REQUIRING AT LEAST 50% OF STATE LOTTERY REVENUE TO BE DISTRIBUTED AS PRIZES, AT LEAST 45% OF LOTTERY REVENUE TO BE PAID TO THE ARKANSAS EDUCATIONAL TRUST FUND AND NO MORE THAN 5% FOR THE EXPENSES OF THE LOTTERY; REQUIRING PAYMENT OF A 15% TAX ON THE" NET GAMING REVENUE" (AS DEFINED) OF ANY CASINO, TO BE ALLOCATED AS FOLLOWS: 80% TO THE STATE'S GENERAL FUND FOR THE PURPOSE OF REDUCING OR ELIMINATING THE GROSS RECEIPTS TAX ON FOOD PURCHASED IN A RETAIL FOOD STORE, WITH ANY EXCESS RETURNED TO THE GENERAL FUND, 10% TO THE ARKANSAS EDUCATIONAL TRUST FUND; 5% OF THE TAX OF ONE CASINO TO THE COUNTY IN WHICH THAT CASINO IS LOCATED (IF THE CASINO IS IN A CITY LIMITS THEN THIS REVENUE SHALL BE DIVIDED EQUALLY BETWEEN THE COUNTY AND THE CITY), 1% TO THE ARKANSAS COMPULSIVE GAMBLING FOUNDATION FOR THE TREATMENT AND PREVENTION OF GAMBLING ADDICTION; 4% TO THE STATE'S GENERAL FUND FOR THE OPERATIONAL COSTS OF THE ARKANSAS GAMING COMMISSION; PROHIBITING THE GENERAL ASSEMBLY FROM REDUCING LOCAL OR STATE FUNDING BECAUSE OF CASINO TAX REVENUE; PROHIBITING ANY OTHER STATE OR LOCAL TAXES, FEES OR ASSESSMENTS ON THE FURNITURE, FIXTURES, EQUIPMENT, PROPERTY, BUSINESS OPERATIONS, GROSS REVENUES, NET GAMING REVENUES OR INCOME OF ARKANSAS CASINO CORPORATION FROM OR USED IN CASINO GAMING; ESTABLISHING THE ARKANSAS EDUCATIONAL TRUST FUND, ALLOCATED AND ADMINISTERED BY THE DEPARTMENT OF EDUCATION, TO PROVIDE GRANTS TO QUALIFIED HIGH SCHOOL GRADUATES FOR POST-SECONDARY EDUCATION; DEFINING POST-SECONDARY EDUCATION AS THE PURSUIT OF AN UNDERGRADUATE DEGREE AT A PUBLIC OR PRIVATE UNIVERSITY, COLLEGE, COMMUNITY COLLEGE OR A DEGREE FROM A VOCATIONAL-TECHNICAL SCHOOL; REQUIRING NOT LESS THAN 24% OF THE EDUCATIONAL TRUST FUND TO BE USED TO EXPAND PRE-KINDERGARTEN EDUCATIONAL PROGRAMS AND TUTORIAL PROGRAMS FOR PRIMARY AND SECONDARY STUDENTS; CREATING THE ARKANSAS GAMING COMMISSION, WHOSE MEMBERS SHALL BE APPOINTED BY THE GOVERNOR WITH THE ADVICE AND CONSENT OF THE SENATE, WHO SHALL: 1) ESTABLISH AND OPERATE THE STATE LOTTERY; 2) LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES; AND 3) AUDIT THE OPERATIONS OF THE CASINOS FOR THE SOLE PURPOSE OF INSURING THAT ALL CASINO TAXES DUE TO THE STATE ARE PAID; PROVIDING FOR JUDICIAL REVIEW OF THE COMMISSION'S DECISIONS OR ACTIONS; ALLOWING A CASINO TO OPERATE ANY DAY FOR ANY PORTION OF THE DAY; ALLOWING THE SELLING OR FREE FURNISHING OF ALCOHOLIC BEVERAGES IN CASINOS DURING ALL HOURS THEY OPERATE BUT OTHERWISE REQUIRING ADHERENCE TO ALL ALCOHOLIC BEVERAGE CONTROL BOARD REGULATIONS; PERMITTING THE SHIPMENT OF GAMBLING DEVICES INTO AUTHORIZED COUNTIES FOR PURPOSES OF FEDERAL LAW; RENDERING THE PROVISIONS OF THE AMENDMENT SEVERABLE; DECLARING INAPPLICABLE ALL CONSTITUTIONAL PROVISIONS AND LAWS TO THE EXTENT THEY CONFLICT WITH THE AMENDMENT; AND DECLARING THE AMENDMENT OPERATIVE UPON PASSAGE.
Pursuant to A.C.A. § 7-9-108, instructions to canvassers and signers must precede every petition, informing them of the privileges granted by the Constitution and of the penalties imposed for violations of this act. Enclosed herewith, over the signature of the Attorney General, are instructions that should be incorporated in your petition prior to circulation.
Sincerely,
MARK PRYOR Attorney General
Enclosure