Mr. Barry Emigh 1720 Arrowhead Road, Apt. O North Little Rock, AR 72118
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed amendment to the Arkansas Constitution:
 POPULAR NAME RIVER BOAT GAMBLING, CHARITABLE RAFFLES AND BINGO, PROPERTY TAX ASSESSMENT, SCHOLARSHIPS USING GAMBLING TAX ON FOOD TAX WITH INTENT TO ABOLISH FOOD TAX AND PAYMENT OF CANVASSERS
 BALLOT TITLE PROVIDING THE OPERATION OF BINGO AS THE RISKING OF MONEY ON A GAME OF CHANCE PLAYED WITH CARDS HAVING NUMBERED SQUARES CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM AND WON BY COVERING THE NUMBERS IN ANY SUCH MANNER AS SHALL BE REQUESTED BY THE OPERATOR OF THE GAME AND RAFFLES AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE AS VOLUNTARY OPTIONS OF OPERATION BY NON PROFIT ORGANIZATIONS; PROVIDING THE OPERATION OF GAMBLING AND GAMING DEVICES AS THE RISKING OF MONEY BETWEEN TWO OR MORE PERSONS ON A CHANCE, WHERE ONE MUST BE LOSER AND THE OTHER GAINER WITH THE USE OF COMMONLY CALLED GAMING DEVICES AND GAMBLING TO INCLUDE ANY KIND OF ROULETTE WHEEL, SLOT MACHINES OF AY KIND, GAMING TABLES OF ANY KIND FOR THE USE OF CARDS USED IN ANY MANNER, GAMING TALES OF ANY KIND FOR THE USE OF DICE USED IN ANY MANNER AS A VOLUNTARY OPTION TO OPERATE ANY ONE OR MORE OR ALL OF THE AFOREMENTIONED GAMING DEVICES AND GAMBLING ON WATER VESSELS ON NAVIGABLE WATER WAYS AND PUBLIC LAKES BY THE "ARKANSAS RIVER BOAT CASINO COMPANY"; PROVIDING FOR THE LEGAL SHIPMENT OF GAMBLING DEVICES INTO A COUNTY; PROVIDING NO PERSON UNDER THE AGE OF EIGHTEEN SHALL PURCHASE A RAFFLE TICKET NOR PARTICIPATE IN BINGO OR CASINO GAMING; PROVIDING NO RESTRICTION ON THE TIME NOR DAYS FOR OPERATING GAMBLING AND GAMING DEVICES ON A VESSEL OPERATED BY THE ARKANSAS RIVER BOAT CASINO COMPANY; PROVIDING FOR THE SALE AND SERVICE OF ALCOHOLIC BEVERAGES DURING THE OPERATING TIME OF GAMBLING AND GAMING DEVICES ON WATER VESSELS OPERATED BY THE ARKANSAS RIVER BOAT CASINO COMPANY; PROVIDING AN ANNUAL FEE OF EIGHTEEN HUNDRED DOLLARS TO THE DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL FOR EACH VESSEL SERVING ALCOHOLIC BEVERAGES; PROVIDING FOR THE ANNUAL AUDITING OF THE ARKANSAS RIVER BOAT CASINO COMPANY BOOKS, RECORDS, AND FINANCIAL AFFAIRS; PROVIDING AN EIGHTEEN PERCENT TAX ON THE TOTAL NET GAMING REVENUES FROM ALL VESSELS OPERATING GAMBLING AND GAMING DEVICES WITHIN THE STATE TO BE ALLOCATED AS FOLLOWS: 62% OF THE TOTAL NET GAMING REVENUE TAX SHALL BE PLACED IN THE ARKANSAS SCHOLASTIC TRUST FUND, 4% OF THE TOTAL NET GAMING REVENUE TAX SHALL BE PAID TO THE STATE, 4% OF THE NET GAMING REVENUE TAX TO THE COUNTY FROM ANY VESSEL OPERATING GAMBLING AND GAMBLING DEVICES WITHIN THAT COUNTY AND DIVIDED EQUALLY FROM THOSE VESSELS OPERATING GAMBLING WITHIN THE CITY LIMIT OF A CITY, 8% OF THE TOTAL NET GAMING REVENUE TAX SHALL BE DIVIDED EUALLY AND DISTRIBUTED AMONG THOSE COUNTIES NOT HAVING A GAMBLING OPERATION WITHIN THEIR JURISDICTION, 22% TO BE DIVIDED BY THE PREVIOUS YEAR'S NUMBER OF STUDENTS K THROUGH 12TH GRADES AND DISTRIBUTED TO EACH SCHOOL DISTRICT BASED UPON THE NUMBER OF STUDENTS WITHIN THAT SCHOOL DISTRICT; PROVIDING NO TAX, NOR FEES ON THE OPERATION OF BINGO AND RAFFLES BY A NONPROFIT ORGANIZATION; PROVIDING NO OTHER TAXES, NOR FEES ON THE PROPERTY, FIXTURES, GROSS INCOME AND NET GAMING REVENUES OF THE ARKANSAS RIVER BOAT CASINO COMPANY THAN THOSE SPECIFIED HEREIN; PROVIDING NO NEW FEES, NOR LICENSES OF ANY SORT, NOR NEW TAXES, NOR INCREASE ON THE NET GAMING REVENUES ON THE OPERATION OF ANY GAMING DEVICE AND GAMBLING OPERATED BY THE ARKANSAS RIVER BOAT CASINO COMPANY AS PROVIDED IN THIS AMENDMENT WITHOUT A THREE QUARTER APPROVAL BY BOTH HOUSES OF THE GENERAL ASSEMBLY; PROVIDING THE AD VALOREM TAX ON THE ASSESSED VALUE OF RESIDENTIAL REAL PROPERTY NOT USED FOR THE PURPOSE OF A BUSINESS, COMMERCIAL, RENTAL AND INDUSTRIAL USE TO BE ASSESSED ON THE PURCHASE PRICE UNTIL THE TITLE IS AGAIN TRASFERRED [SIC]; PROVIDING THE CURRENT ASSESSED VALUE OF RESIDENTIAL REAL PROPERTY TO BE THE ASSESSED VALUE UNTIL THE TITLE IS AGAIN TRASFERRED [SIC]; PROVIDING FOR THE REASSESSMENT OF RESIDENTIAL REAL PROPERTY BY THE ASSESSOR WHEN THE REAL PROPERTY OR ANY PART OF A REAL PROPERTY TRANSFERRED IN TITLE CANNOT BE ASSESSED ON THE PURCHASE PRICE; PROVIDING FOR THE SEPARATE RECEIPT AND ACCOUNTING BY THE DEPARTMENT OF FINANCE AND ADMINISTRATION OF THE STATE AND LOCAL GROSS RECEIPT SALES TAX ON FOOD ITEMS; DEFINING FOOD ITEMS AS ANY ITEM THAT IS EDIBLE TO INCLUDE DRINKABLE FOOD ITEMS AND NON-PRESCRIPTION VITAMIN SUPPLEMENTS WITH EXCEPTION TO THOSE EXCLUSIONS AS HEREIN STATED; REQUIRING THE IMMEDIATE DEPOSIT OF THE FOOD TAX IN THE ARKANSAS SCHOLASTIC TRUST FUND; A FUND CREATED AS A PUBLIC TRUST SEPARATE AND APART FROM THE STATE TREASURY TO BE ADMINISTERED BY THE STATE BOARD OF FINANCE; EMPOWERING THE STATE BOARD OF FINANCE TO USE FIVE PERCENT OF THE TRUST FUND FROM THE FIRST 180 DAYS FOR ADMINISTRATIVE COST; EMPOWERING THE STATE BOARD OF FINANCE TO PAY FIVE PERCENT FROM THE TRUST FUND FROM THE FIRST 180 DAYS TO THE INITIATIVE SPONSOR OF THIS AMENDMENT; PROVIDING THE TRUST FUND FROM THE FIRST 180 DAYS SHALL BE DIVIDED EQUALLY BY THE NUMBER OF SIGNATURES REQUIRED AND ACCEPTED BY THE SECRETARY OF STATE TO PLACE THIS INITIATIVE ON THE BALLOT; PROVIDING EACH CANVASSER SHALL BE PAID AN EQUAL PART OF THE TRUST FUND FROM THE FIRST 180 DAYS FOR EACH SIGNATURE ACCEPTED BY THE SECRETARY OF STATE TO PLACE THE INITIATIVE ON THE GENERAL ELECTION BALLOT; PROVIDING NO PAYMENT SHALL BE MADE BY THE STATE BOARD OF FINANCE TO ANY PERSON FOR THEIR SIGNATURE ON ANY PETITION WITH THEIR SIGNATURE ON ANY PETITION WITH THEIR SIGNATURE AS CANVASSER WITNESSED BY A NOTARY PUBLIC; REQUIRING THE STATE BOARD OF FINANCE TO MAKE SUCH AMOUNTS PAYABLE FROM THE TRUST FUND AS PROVIDED TO THOSE QUALIFIED CANVASSERS NOT MORE THAN 30 WORKING DAYS AFTER THE FIRST ONE HUNDRED AND EIGHTY FIRST DAY FROM THE TIME OF PASSAGE OF THIS AMENDMENT; PROVIDING ANY PAYMENT TO THE INITIATIVE SPONSOR AND CANVASSERS BY THE STATE BOARD OF FINANCE FROM THE TRUST FUND SHALL BE EXAMPT FROM ANY STATE TAX; AMENDING A.C.A. § 19-4-803 TO EXEMPT THE ARKANSAS SCHOLASTIC TRUST FUND FROM THE REQUIREMENTS OF AN APPROPRIATION; EMPOWERING THE STATE BOARD OF FINANCE TO MANAGE AND INVEST THE TRUST FUND IN COMPLIANCE WITH THE PRUDENT INVESTOR RULE AND OTHER APPLICABLE STANDARDS IN A.C.A. §§ 24-3-408, -414, -415, -417 TO -425 AND A.C.A. § 19-3-518; REQUIRING SUCH INVESTMENTS AND EARNINGS TO BE KEPT AS DISTINCT CASH FUNDS SEPARATE AND APART FROM THE STATE TREASURY; EMPOWERING THE STATE BOARD OF FINANCE TO HIRE PROFESSIONALS TO ASSIST IN THE INVESTMENT OF THE TRUST FUND AND AUTHORIZING THE BOARD TO USE INVESTMENT EARNINGS FROM THE TRUST FUND TO COMPENSATE SUCH PROFESSIONALS; AUTHORIZING THE STATE BOARD OF FINANCE TO DISTRIBUTE 40% OF THE PREVIOUS ANNUAL INVESTMENT EARNINGS FROM THE TRUST FUND FOR SCHOLARSHIPS, OF WHICH 40% SHALL BE DISTRIBUTED FOR THE FALL SEASON OF CLASSES, 40% FOR THE WINTER SESSION, AND 20% FOR THE SUMMER SESSION; AUTHORIZING THE STATE BOARD OF FINANCE TO DISTRIBUTE 8% OF THE PREVIOUS ANNUAL INVESTMENT EARNINGS FROM THE TRUST FUND EQUALLY TO EACH TEACHER EMPLOYED FULL TIME BY A PUBLICLY FUNDED EDUCATIONAL INSTITUTE; AUTHORIZING THE STATE BOARD OF FINANCE TO DISTRIBUTE 2% OF THE PREVIOUS ANNUAL INVESTMENT EARNINGS FROM THE TRUST FUND TO THE TEACHER'S RETIREMENT FUND; PROVIDING ANY AMOUNT PAID TO THE TEACHER'S RETIREMENT FUND, TEACHER AND SCHOLARSHIP MONEY RECEIVED FROM THE TRUST FUND SHALL BE EXEMPT FROM ANY STATE TAX; REQUIRING REDEPOSIT IN THE TRUST FUND OF INVESTMENT EARNINGS NOT USED FOR SCHOLARSHIPS OR EXPENSES OF ADMINISTRATION; PROVIDING FOR APPLICATION FOR SCHOLARSHIPS TO BE SUBMITTED TO THE STATE BOARD OF FINANCE TO ANY UNIVERSITY, COLLEGE AND COMMUNITY COLLEGE WITHIN THE STATE; REQUIRING THE APPLICATION TO STATE THE FULL AMOUNT OF TUITION COST FOR THE CHOSEN UNIVERSITY, COLLEGE AND COMMUNITY COLLEGE FOR EACH SESSION OF CLASSES, THE AMOUNT OF ANY OTHER FINANCIAL AID, GRANTS OR SCHOLARSHIPS RECEIVED BY THE INDIVIDUAL, THE INDIVIDUAL'S EARNED GROSS INCOME FROM THE PREVIOUS YEAR, AND THE BALANCE OF ANY INDIVIDUAL AND JOINT BANK ACCOUNTS; SETTING THE DEALINES [SIC] FOR FILING APPLICATIONS AS NOT MORE THAN 90 WORKING DAYS, NOR LESS THAN 15 WORKING DAYS PRIOR TO: THE LAST DAY OF AUGUST FOR THE FALL SESSION OF CLASSES, THE LAST DAY OF DECEMBER FOR THE WINTER SESSION, AND THE LAST DAY OF MAY FOR THE SUMMER SESSION; REQUIRING DISTRIBUTION OF FULL-TUITION SCHOLARSHIPS TO ANY UNIVERSITY, COLLEGE AND COMMUNITY COLLEGE IN THE STATE FIRST, TO THOSE PERSONS WITH THE LOWEST TOTAL AMOUNT BY ADDING BOTH THE AMOUNT OF TUITION PAYMENT (AFTER DEDUCTIONS FOR OTHER FINANCIAL AID, GRANTS AND SCHOLARSHIPS) AND THE INDIVIDUAL'S PREVIOUS YEAR TOTAL GROSS INCOME; REQUIRING THE STATE BOARD OF FINANCE TO DEDUCT THE TOTAL AMOUNT OF THE PERSON'S INDIVIDUAL BANK ACCOUNTS OVER THE AMOUNT OF $2,500 FORM THE TUITION PAYMENT RECEIVED; REQUIRING THE STATE BOARD OF FINANCE TO DEDUCT 50% OF THE TOTAL AMOUNT OF THE PERSON'S JOINTLY HELD BANK ACCOUNTS OVER THE AMOUNT OF $5,000 FORM THE TUITION PAYMENT RECEIVED; PROHIBITING THE STATE BOARD OF FINANCE FROM MAKING ANY PAYMENTS FOR ANY PERSON TO RETAKE ANY FAILED UNIVERSITY, COLLEGE AND COMMUNITY COLLEGE CLASS; REQUIRING THE STATE BOARD OF FINANCE TO NOTIFY APPLICANTS OF THE AMOUNT OF THEIR TUITION PAYMENT AND MAKE SUCH AMOUNT PAYABLE TO THE UNIVERSITY, COLLEGE OR COMMUNITY COLLEGE NOT MORE THAN 15 WORKING DAYS AFTER THE FINAL SUBMISSION DATE OF AN APPLICATION; EXEMPTING FOOD ITEMS AS DEFINED HEREIN FROM THE STATE AND LOCAL GROSS RECEIPT SALES TAX WHEN 50% OF THE INVESTMENT EARNINGS FROM THE TRUST FUND EXCEEDS THE ANNUAL DEPOSIT OF THE STATE AND LOCAL GROSS RECEIPT SALES TAX ON FOOD ITMES RECEIVED BY THE STATE BOARD OF FINANCE; TO PROVIDE THIS AMENDMENT TO BE SELF EXECUTING; TO PROVIDE SEVERABILITY AND TO REPEAL ANY STATUTES AND LAWS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title, under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
Some of the ambiguities to which I refer are the same as those outlined and discussed in A.G. Opinion No. 2000-186. I will not reiterate those here. However, I urge to review the discussion set forth in that opinion.
In addition to the ambiguities discussed in A.G. Opinion No. 2000-186, I note the following:
 (1) Section One (1). This section purports to permit the operation of "bingo" by "any nonprofit organization." The ambiguity lies in the definitions (set forth in Section Eighteen) of the terms "bingo" and "nonprofit organization." These definitions raise questions as to the scope of their coverage. It is unclear, for example, whether "bingo," as used in your proposed measure, includes "charitable" bingo, or bingo played for a prize as opposed to money. Because the definition refers to a "game of chance," it is also unclear whether your proposed measure would permit the operation of bingo in instances where it is argued that the game is one of skill. The definition of "nonprofit organization" does not specify the nature of the organization, such as whether the organization must be incorporated in the State of Arkansas or registered to do business in the State of Arkansas.
 (2) Section One (2). This section makes reference to the "Arkansas River Boat Casino Company." This entity is also referred to in other parts of the proposed amendment. The definition of this entity (which is set forth in Section Eighteen) raises questions about the identity of this entity. This definition does not indicate whether the entity is one that is already in existence, is incorporated in the State of Arkansas, or is an unincorporated entity. The definition is also stated broadly enough to include any entity that organizes under the name "Arkansas River Boat Casino Company." If the named entity is intended to be one entity only, this fact should be clarified.
 (3) Section One (3). When this section is read in conjunction with the previous section, it is unclear whether the gambling that is permitted is permitted only on navigable water ways and public lakes, or whether the permitted locations merely include these locations.
 (4) Section One (4). It is unclear from the wording of this section whether it is intended to require a fee only for the sale of alcoholic beverages, or also for the provision of complimentary alcoholic beverages. It is also unclear whether the fee would apply to a gambling operation that is conducted other than on a navigable water way or public lake (if such activity is permitted). Finally, this section, by levying a fee, appears to conflict with the provisions of Section Four (3), which prohibits the levying of any fee against the Arkansas River Boat Casino Company.
 (5) Section Six. This section makes reference to" real properties that cannot for all purposes be assesed (sic) on the purchase price that have been assessed by the assessor." The intended meaning of the language is unclear and therefore cannot be summarized. This ambiguity also appears in Section Seven.
 (6) Section Nine. This section appears to contain an internal inconsistency. That is, Section 1 of this section seems to require that all of the amount received in the Arkansas Scholastic Trust Fund for the first 180 days be distributed to canvassers. Yet the remaining sections require distribution of certain percentages of that amount other than to canvassers.
 (7) Section Eleven (4). Section (a) of this section provides for disbursement from the trust fund created therein to "universities, colleges and community colleges within the state." The language of this section does not specify whether the amounts are to be disbursed only to state institutions, or also to private institutions located within the state. If the latter is the intent, the measure should explain its intended impact upon and interaction with Article 2, § 24 of the Arkansas Constitution and the First Amendment of the United States Constitution. Section (b) of this section provides for the distribution of 8% of the fund in question to "each teacher employed full time by a publicly funded institute of education within the state." The language should clarify whether the 8% is to be divided equally among the teachers, or whether, indeed, each teacher is receive an amount equal to 8% of the amount.
 (8) Section Twelve. It is unclear whether this section is intended merely to amend the named statutory section (which would be a rather novel function for a constitutional amendment), or to create a constitutional exemption to the provisions of Subchapter 8 of Title 19, Chapter 4, which could only be rescinded by amending the constitution.
 (9) Section Seventeen. This section purports to exempt food items from "state and local gross receipt sales tax when at any time fifty (50%) percent of the total amount of the previous annual investment earnings from the Arkansas Scholastic Trust Fund exceeds the annual amount of the state and local gross receipt sales tax on food items received by the State Board of Finance." This section does not specify how often or when these amounts are to be calculated. Given the fact that investment earnings can change on a daily basis, it is difficult to discern from the language of this section how it is to be applied.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, Case No. 00-485 (July 7, 2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General