Travis J. Morrissey Hurst Law Firm 213 Woodbine Hot Springs, AR 71901
Dear Mr. Morrissey:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following ballot title for a proposed amendment to the Arkansas Constitution:
 Ballot Title PROPOSING AN AMENDMENT TO AMENDMENT NO. 35 TO THE CONSTITUTION OF THE STATE OF ARKANSAS TO PROVIDE FOR THE ELECTION OF MEMBERS OF THE ARKANSAS STATE GAME AND FISH COMMISSION BY POPULAR VOTE; TO PROVIDE FOR THE APPOINTMENT OF THE DIRECTOR OF THE ARKANSAS STATE GAME AND FISH COMMISSION BY THE GOVERNOR; TO PROVIDE FOR TRANSITION TO THE NEW FORM OF THE ARKANSAS STATE GAME AND FISH COMMISSION; AND FOR OTHER PURPOSES
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed ballot title under the above precepts, it is my conclusion that I must reject your proposal at this time. As an initial matter, you have failed to submit a proposed popular name for my review. Section 7-9-107 (a) is very clear in requiring a sponsor of a measure to submit the measure for my review with both a proposed ballot title and popular name. In addition, I must reject your proposed ballot title due to ambiguities in the text of your measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 1(a), (b), (c) and (d) of your measure, which amend Section 2 of Amendment 35, require the members of the Arkansas Game and Fish Commission to be elected by popular vote, and set out the procedures governing such election. The introductory language of Section 2 of Amendment 35, however, which you have left unamended, flatly contradicts this requirement, and still refers to the appointment of commissioners by the Governor. This is highly confusing and must be clarified prior to my certification of a ballot title for your measure.
 2. Section 1 (a) of your measure requires the election of two commissioners from each congressional district of the state existing at the time of the election. Under current congressional districting, the commission would be comprised of eight members. The number of commissioners, as I read your proposal, however, might increase or decrease with the number of congressional districts existing at any given election. You have left unamended in this regard, however, Section 1 of Amendment 35, which refers unalterably to a commission comprised of eight members and to one non-voting "associate" member who shall be head of the Zoology Department at the University of Arkansas. Section 1(a) of your measure therefore appears to conflict with Section 1 of Amendment 35 as to the possible number of commissioners. In addition, I am uncertain whether this last-mentioned member (head of the Zoology Department) is to remain on the Commission under your proposal. See also, however, Op. Att'y Gen. 90-306 (opining that this position is now held by the Chair of the Biological Sciences Department at the University).
 3. Section 1(b) of your measure requires the elected members of the commission to be nominated at the primary election and elected at the general election. It states that the laws governing primary elections and the holding of general elections shall apply and govern the nomination and election of commissioners. Filing fees are to be those set by the respective political parties. I see no mention in this Section of the candidacy of independent candidates for the commission. I am uncertain as to whether this Section's reference to the laws governing general elections is sufficient to permit the candidacy of independent candidates, which may be constitutionally compelled. See generally, Williams v. Rhodes, 393 U.S. 23 (1968).
 4. Section 2 of your measure is also contradictory and confusing in its amendment of Section 3 of Amendment 35. Specifically, this Section of your proposal leaves unamended portions of Section 3 of Amendment 35 which refer to the appointment of commissioners by the Governor, to seven year terms of such commissioners, and to the one-term limitation, all of which conflict with the provisions of your new amendments to Amendment 35. I cannot begin to certify a ballot title for your measure in the face of these contradictions.
 5. Section 2 of your measure, in amending Section 3 of Amendment 35, also requires the General Assembly to determine the amount of compensation and expenses to be paid the commissioners. Your proposal leaves unamended, however, Section 4 of Amendment 35, which provides that commissioners shall serve without compensation other than actual expenses. I cannot clearly summarize this contradictory point in a ballot title for your measure.
 6. Section 3 of your amendment, which amends Section 5 of Amendment 35 is also contradictory. It retains language regarding the removal of Game and Fish Commissioners by the Governor with review by the "Chancery Court" of the First District with a right of appeal. As an initial matter, Amendment 80 to the Arkansas Constitution and its enabling legislation abolished the chancery courts of this state. In addition, this Section retains language concerning a right of appeal, but strikes the reference to the appeal being in the Supreme Court. I am uncertain as to the effect of this omission. In addition, the second paragraph of your Section 3 contains redundant language and I cannot determine its effect on current law. This Section states that no commissioner may be removed from office except for the same causes as apply to constitutional officers or because they no longer meet the qualifications provided in the Amendment. Your Section 3 provides that any action for removal shall be brought by the Attorney General at the request of the Governor and shall be heard in the circuit court for the county in which the commissioner resides. Several ambiguities arise from this Section. First, the jurisdiction placed in the circuit court contradicts the earlier retained language regarding the now non-existent Chancery Court of the First District. Second, the only way a state "constitutional officer" may be removed from office under current law is either by impeachment for high crimes and misdemeanors and gross misconduct in office (see Arkansas Constitution, art. 15, § 1), or by the Governor for "good cause," upon the joint address of two-thirds of the members elected to each house (see Arkansas Constitution, art. 15, § 3), or by a court action brought by the Attorney General on the grounds of ineligiblity. See e.g., Drennen v. Bennett, 230 Ark. 330, 322 S.W.2d 585 (1959). I am uncertain how your new proposed language affects these existing procedures. It appears to be your intention to provide an exclusive procedure for gubernatorial removal of commissioners with review by the circuit court for the same "causes" as for constitutional officers (i.e. high crimes and misdemeanors and gross misconduct in office or "good cause"). No appeal is mentioned in your new language, however. In addition, I am uncertain as to whether your requirement that "any action for removal" be brought by the Attorney General at the request of the Governor applies in the case of ineligibility to office as well as to removal for cause. Under current law, the Attorney General may institute an action for ouster based upon ineligibility without leave of the Governor. See Drennen, supra.
 7. Section 4 of your measure, which amends Section 6 of Amendment 35 is also confusing. The retained language in the introductory portion provides that a "chairman" shall be elected annually by the "seven" members of the commission. In addition to referring to "seven" members of the commission, which appears contrary to your new amendment, this language conflicts with your Section 5, adding new Section 9 to Amendment 35, which states that the General Assembly may by law authorize the Commission to elect a chairman. No annual restriction on service is listed in your Section 5. In addition, Section 4 of your proposal states that "[t]here shall be a Chairman of the Arkansas State Game and Fish Commission." The "Chairman" is to be appointed by the Governor for a term of four years. The last sentence of this Section states that the "director" may be reappointed at the pleasure of the Governor. I assume, therefore, that the references to "Chairman" in this paragraph should read "director." I cannot certify a ballot title for your measure in light of these contradictions.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh